UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

PATTIE ANN PUSATERI, as Administrator for the Estate
of GREGORY LEE GALLAWAY,

                              Plaintiff,

                                                    **COMPLAINT**

vs.

                                                    Index No.:

CITY OF DUNKIRK,
CITY OF DUNKIRK POLICE DEPARTMENT,
CITY OF DUNKIRK POLICE OFFICER
DENISE ZENTZ,
CHAUTAUQUA COUNTY,
CHAUTAUQUA COUNTY SHERIFF
JAMES B. QUATTRONE,
JOHN AND/OR JANE DOE(S) said being
CHAUTAUQUA COUNTY SHERIFF DEPUTIES,
CHAUTAUQUA COUNTY SHERIFF
SERGEANT FULLER,
JOHN AND/OR JANE DOE(S) said being
 CHAUTAUQUA COUNTY JAIL PERSONNEL,
ANGELA M. DAMORE, FNP-C,
AMY MEYER RN,

                              Defendants.
_____

    1.  Plaintiff, abovenamed, by her attorneys, VANETTE PENBERTHY LLP, for

her Complaint against the above-captioned defendants, alleges as follows:

                    **JURISDICTION AND VENUE**

    2.        This is a civil action seeking damages for constitutional violations,

actionable under 42 U. S. C. § 1983, being Federal Questions cognizable in this Court

under 28 U.S.C. § 1331, and for New York State law claims resulting in personal

injuries due to negligence, medical malpractice, and wrongful death, brought in this court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

3.      Venue is proper in this Court, under 28 U.S.C. § 1391, as all of the events giving rise to the claims occurred within the geographical boundaries of the Western District of New York.

## PARTIES

4.      The plaintiff, PATTIE ANN PUSATERI, as Administrator of the Estate of GREGORY LEE GALLAWAY, at all times hereinafter mentioned, was and still is a resident of the Town of Tonawanda.

5.      On or about July 9, 2019, the plaintiff, PATTIE ANN PUSATERI, was granted Letters of Administration by the Surrogate's Court for the County of Chautauqua, State of New York, authorizing her to pursue the causes of action stated herein this Complaint. Plaintiff, PATTIE ANN PUSATERI is still acting as the Administrator of the Estate of GREGORY LEE GALLAWAY.

6.      The CITY OF DUNKIRK ("CITY") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

7.      The CITY OF DUNKIRK POLICE DEPARTMENT ("DUNKIRK POLICE") is a division of the CITY, which at all times was operated, managed, maintained, supervised and controlled by the CITY, and which is a governmental organization of the CITY.

8.      CITY OF DUNKIRK POLICE OFFICER DENISE ZENTZ ("ZENTZ")

was an officer with the DUNKIRK POLICE who participated, individually or jointly and severally with other officers, agents, servants, and/or other employees or subordinates of the CITY and/or DUNKIRK POLICE, including JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, in the apprehension, detention, placement of in to a lockup facility, and transport of GREGORY LEE GALLAWAY on April 10, 2019.

9.      The COUNTY OF CHAUTAUQUA ("COUNTY") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. The COUNTY is charged by the laws of the State of New York with a duty to maintain the Chautauqua County jail, located at 15 East Chautauqua St, Mayville, New York 14757, to provide a jail physician thereat, and/or to train employees staff and/or other subordinates rendering medical and psychiatric care and treatment at the Chautauqua County Jail, and as such, is responsible for the health and safety of those incarcerated or detained at the Chautauqua County Jail.

10.     CHAUTAUQUA COUNTY SHERIFF JAMES B. QUATTRONE ("QUATTRONE") at all times relevant to this Complaint, was the Sheriff of Chautauqua County and was responsible for various of the day-to-day operations of the Chautauqua County Jail, and the safekeeping of inmates. QUATTRONE was also responsible for the training, supervision, hiring, and retention of Sheriff's sergeants, lieutenants, captains, and deputies, including, but not limited to, those sergeants, lieutenants, captains, and deputies engaged and involved in the custody, safekeeping, and detention of GREGORY LEE GALLAWAY on April 10, 2019 to April 11, 2019,

including JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES and JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL. On April 10 and 11, 2019, GREGORY LEE GALLAWAY was within the custody of QUATTRONE. QUATTRONE is sued in his individual and/or official capacities.

11.     JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES were employees or otherwise subordinates of QUATTRONE and/or the COUNTY, and were involved in the supervision of GREGORY LEE GALLAWAY at all times while he was in the custody of QUATTRONE at the Chautauqua County Jail from April 10, 2019 to April 11, 2019, which also encompasses all of the time period that he was placed in cell "CS2." Part of the supervision and safekeeping detail of Plaintiff's decedent, GREGORY LEE GALLAWAY by the various JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES included the placement of decedent in a suicide gown, and maintaining increased supervision of decedent between April 10, 2019 to April 11, 2019, which was attempted by establishing an increased supervision post outside of cell CS2. JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES are sued in their individual and/or official capacities.

12.     JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, were employees or otherwise subordinates of QUATTRONE and/or the COUNTY, and were involved in the supervision and safekeeping of

GREGORY LEE GALLAWAY at all times while he was in the custody of QUATTRONE at the Chautauqua County Jail from April 10, 2019 to April 11, 2019, which also encompasses all of the time period that he was placed in cell CS2. Part of the supervision and safekeeping detail of Plaintiff's decedent, GREGORY LEE GALLAWAY by the various JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL included the placement of decedent in a suicide gown, and maintaining increased supervision of decedent between April 10, 2019 to April 11, 2019, which was attempted by establishing an increased supervision post outside of cell CS2. JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL are sued in their individual and/or official capacities.

13.     CHAUTAUQUA COUNTY SHERIFF SERGEANT FULLER ("FULLER") was an employee or otherwise a subordinate of QUATTRONE and/or the COUNTY, and was involved in the supervision and safekeeping of Plaintiff's decedent, GREGORY LEE GALLAWAY, along with JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL and JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, and sharing like duties, while decedent was in the custody of QUATTRONE at the Chautauqua County Jail from April 10, 2019 to April 11, 2019. FULLER is sued in his/her individual and/or official capacities.

14.     ANGELA M. DAMORE, FNP-C ("DAMORE") at all times relevant, was

5

a Family Nurse Practitioner, stationed at the Chautauqua County Jail, an employee or subordinate of the COUNTY, and charged with the task of rendering medical care and treatment to inmates at the Chautauqua County Jail, including to GREGORY LEE GALLAWAY on April 10, 2019. Upon information and belief, at other times, prior to April 10, 2019, DAMORE had rendered medical care and treatment to GREGORY LEE GALLAWAY, and was thus familiar with the medical, prescription, and psychiatric history of GREGORY LEE GALLAWAY on April 10, 2019. DAMORE is sued in her individual and/or official capacities.

15.     AMY MEYER, RN ("MEYER") at all times relevant was a registered nurse, stationed at the Chautauqua County Jail, an employee or subordinate of the COUNTY, and charged with the task of rendering medical care and treatment to inmates at the Chautauqua County Jail, including to GREGORY LEE GALLAWAY on April 10, 2019. At other times, upon information and belief, prior to April 10, 2019, MEYER had rendered medical care and treatment to GREGORY LEE GALLAWAY, and was thus familiar with the medical, prescription, and psychiatric history of GREGORY LEE GALLAWAY on April 10, 2019. MEYER is sued in her individual and/or official capacities.

## STATE LAW NOTICES OF CLAIM

16.     On or about the 9th of July, 2019, a Notice of Claim was served on behalf of the plaintiff upon the CITY, LEE ANN LAZARONY, DUNKIRK POLICE, CITY, ZENTZ, COUNTY, QUATTRONE, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, and JOHN AND/OR JANE

DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, in duplicate, which Notice of Claim sets forth the name and post office address of her attorneys, the nature of the claim, the time when, the place where and the manner in which the claims arose, together with items of damage then known to exist, and the said Notice of Claim was served upon CITY, LEE ANN LAZARONY, DUNKIRK POLICE, CITY, ZENTZ, COUNTY, QUATTRONE, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, and JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, within ninety (90) days of the date upon which the claim arose. At least thirty (30) days have elapsed since the service of the Notice of Claim as aforesaid, and CITY, LEE ANN LAZARONY, DUNKIRK POLICE, CITY, ZENTZ, COUNTY, QUATTRONE, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, and JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL have failed and neglected to adjust or pay the said claim.

17.     On or about the 24th of September, 2019, a second Notice of Claim was served on behalf of the plaintiff upon the CITY, DUNKIRK POLICE, ZENTZ, COUNTY, QUATTRONE, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNELL, DAMORE, and MEYER, in duplicate, which Notice of Claim sets forth the name and post office address of her attorneys, the nature of the claim, the time when, the place where and the manner

in which the claims arose, together with items of damage then known to exist, and the said Notice of Claim was served upon CITY, DUNKIRK POLICE, ZENTZ, COUNTY, QUATTRONE, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNELL, DAMORE, and MEYER, within ninety (90) days of the date upon which the claim arose. At least thirty (30) days have elapsed since the service of the Notice of Claim as aforesaid, and CITY, DUNKIRK POLICE, ZENTZ, COUNTY, QUATTRONE, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNELL, DAMORE, and MEYER have failed and neglected to adjust or pay the said claim.

### STATEMENT OF FACTS

18.     On April 10, 2019, the decedent, GREGORY LEE GALLAWAY, turned himself in or surrendered to the Dunkirk City Court in response to a warrant that had been issued against him for previously having failed to appear in that court relative to a pending criminal case.

19.     At that time, prior to the appearance on the record, the City of Dunkirk, City Court Treatment Court Coordinator, Lee Ann Lazaroney, administered a drug screen of decedent, GREGORY LEE GALLAWAY.

20.     The drug screen demonstrated that decedent, GREGORY LEE GALLAWAY tested positive for THC, cocaine, benzodiazepine, and suboxone.

21.     The drug screen was taken in connection with a Drug Treatment Court

contract, that decedent, GREGORY LEE GALOWAY entered into with the Dunkirk City Court on February 1, 2018, the terms of compliance therewith, on the part of decedent, included, upon information and belief, abstinence from illicit drug use.

22.     Lee Ann Lazaroney advised the Dunkirk City Court, in open court and on the record, that decedent, GREGORY LEE GALLAWAY had tested positive for the THC, cocaine, benzodiazepine, and suboxone.

23.     Lee Ann Lazaroney advised the Dunkirk City Court that decedent had tested positive at least three times for drug use within the last year prior to April 10, 2019.

24.     The Dunkirk City Court then determined to remand Plaintiff's decedent, GREGORY LEE GALLAWAY into the ultimate custody of QUATTRONE, at the Chautauqua County Jail, subject to a return on April 25, 2019 for further disposition.

25.     During this hearing, Lee Ann Lazaroney then expressed in open court and on the record "I am concerned for his safety and well-being, Your Honor."

26.     In addition to the observations and expression of concern of Lee Ann Lazaorney in open court, on April 10, 2019, following the court appearance, the decedent's cousin, Christine Kaiser, advised the CITY and DUNKIRK POLICE, by and through advising an officer on duty at the Dunkirk City Court, that Plaintiff's decedent, GREGORY LEE GALLAWAY was not well, and that something was wrong with decedent.

27.     Decedent, GREGORY LEE GALLAWAY was observed in such a

disordered state that he was observed holding his head against a wall in the court for support, that it was difficult for him to walk in his drug-induced state, and, at one point, he fell on top of his cousin, Christine Kaiser, when attempting to embrace her, prior to being remanded into custody. Decedent's cousin, Christine Kaiser, communicated these observations to various officers of the DUNKIRK POLICE.

28.     This information concerning Plaintiff's decedent, GREGORY LEE GALLAWAY's alarming physical and mental condition was also communicated to his mother, plaintiff, PATTIE ANN PUSATERI, on April 10, 2019 by decedent's cousin, at approximately 10:00 a.m.

29.     Upon being advised of this information, Plaintiff, PATTIE ANN PUSATERI called the DUNKIRK POLICE and spoke with ZENTZ, advising ZENTZ of the alarming facts just communicated to her about Plaintiff's decedent, her son, GREGORY LEE GALLAWAY's condition. Plaintiff told ZENTZ that she was afraid and concerned that her son, Plaintiff's decedent, GREGORY LEE GALLAWAY would die if ZENTZ did not seek immediate medical treatment, and that he had likely taken a "suicide cocktail" of drugs. ZENTZ responded to plaintiff that decedent was "fine."

30.     Upon being remanded into custody, Plaintiff's decedent, GREGORY LEE GALLAWAY became a pretrial detainee of, first, the CITY and/or DUNKIRK POLICE, and, subsequently, QUATTRONE at the Chautauqua County Jail, to which various duties of care were then assumed by the COUNTY.

31.     Following his Dunkirk City Court appearance, decedent GREGORY

LEE GALLAWAY was transported to the Dunkirk City lock-up where he remained in the custody of the CITY on April 10, 2019 until he was transferred to the Chautauqua County Jail.

32.     Upon information and belief, at all times while decedent, GREGORY LEE GALLAWAY was in the custody of the CITY, no medical care or treatment was rendered to him, despite the grave expressions of concern made to the CITY, DUNKIRK POLICE, and ZENTZ, as well as it being clear, observable, and apparent to the CITY and the DUNKIRK POLICE, by and through their employees and other subordinates, that Plaintiff's decedent, GREGORY LEE GALLAWAY was under the influence of drugs, was intoxicated, or suffering drug withdrawal symptoms requiring medical treatment.

33.     On April 10, 2019, decedent, GREGORY LEE GALLAWAY was transported from the Dunkirk City lock-up to the Chautauqua County Jail. At approximately 1:24 p.m., a Chautauqua County Jail questionnaire was completed where Plaintiff's decedent, GREGORY LEE GALLAWAY was noted a "high risk" for "medical" and "psychiatric." Responses to the Questionnaire included that decedent was taking the following medications: "Kepra, Olazapene, Gabapentin, Welbutrin," and "Amitriptaline CVS Brooklyn Square." The Questionnaire was responded to further that decedent was currently receiving treatment for a medical condition, and that he was receiving mental health treatment, that he had taken suboxone within the last 48 hours. This questionnaire was later apparently signed by MEYER, on April 12, 2019.

34.     On April 10, 2019 at approximately 1:45 p.m., a Chautauqua County Health and Human Services/Jail Division Opiate Withdrawal Assessment was completed by MEYER. MEYER noted in the narrative:

> "Inmate seen for Suboxone w/d Inmate takes 12mg QD. Inmate lethargic & slurring words. Inmate first admits to meth use, then denies. Inmate then states he had a dirty urine. . .multiple drugs. Inmate argumentative. . .staff & blaming medical for not getting his meds. Inmate stated he was suicidal, but when this writer phoned Sgt Fuller inmate began yelling "She's lying." Sgt. Fuller spoke [with] inmate. Inmate stated he would try to kill himself just for spite. Inmate asked if he attempted suicide would he be removed from CW. Inmate then removed from medical and taken to booking for CW.

35.     DAMORE, at approximately 2:00 p.m. on April 10, 2019, ordered Keppra 500 milligrams po BID," and anticonvulsant drug, "multivitamins po QD," and "Olanzipine 10 milligrams QHS," an antipsychotic drug. This order was received and noted by MEYER.

36.     Upon information and belief, despite the order, Keppra was never administered to decedent, GREGORY LEE GALLAWAY, despite the well-established high risk of unstoppable seizures associated with abrupt cessation of Keppra.

37.     DAMORE and MEYER knew or should have known that the polysubstance intoxication or indications could cause respiratory depression and increase risk of death, as well as increasing the risk of seizure death with respiratory depression.  Moreover, the administration of Olanzapine, in addition to the multiple substances decedent took before incarceration, further caused respiratory depression,

facts that MEYER and DAMORE knew or should have known in prescribing and administering the Olanzapine.

38.     Critically, upon information and belief, long prior to April 10, 2019, dating back to at least 2018, medical staff at the Chautauqua County Jail, including DAMORE and MEYER, were associated with and familiar with decedent, GREGORY LEE GALLAWAY's medical and psychiatric file and/or records, and prescription medications, including the fact that he had previously been noted to have high risk factors, including medical and psychiatric risks.

39.     Decedent had previously been diagnosed, while an inmate in the Chautauqua County Jail, with bipolar disorder, anxiety, depression and seizures. Decedent had also previously reported anger management issues, mood swings, paranoia, panic attacks, inability to concentrate while communicating, poor focus and attention, in addition to substantial substance abuse issues.  Furthermore, upon information and belief, Plaintiff's decedent had previously suffered a seizure in 2018, while at the Chautauqua County Jail, in the custody of QUATTRONE.

40.     Following the opiate assessment, upon information and belief, decedent, GREGORY LEE GALLAWAY was placed in a suicide gown.

41.     Following his assessments and being placed in a suicide gown, at approximately 6:30 p.m. on April 10, 2019, Plaintiff's decedent was transported to his cell, marked "CS2" where he remained until the following morning, when he was found unresponsive at approximately 6:00 a.m. on April 11, 2019.

42.      During this time in cell CS2, QUATTRONE's deputies, JOHN AND/OR

JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES; JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and /or FULLER. and others were stationed outside of Plaintiff's decedent's cell, at CS2, for the purposes of observing Plaintiff's decedent.

43.     The monitoring requirements of inmates are promulgated in part by the Commission of Corrections, and Title 9 of the New York Code of Rules and Regulations, which were binding on QUATTRONE and his staff, including JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, and JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL.

44.     At approximately 7:40 p.m. on April 10, 2019, Plaintiff's decedent, GREGORY LEE GALLAWAY was given medications, including clonidine, a blood pressure medication, Imodium, a diarrhea medication, and Olanzapine, an anti-psychotic. He was still not dispensed Keppra, despite it being ordered. Upon information and belief, this was the last time any medical treatment was rendered to Plaintiff's decedent until he was discovered deceased the next day.

45.     While Plaintiff's decedent, GREGORY LEE GALLAWAY was under constant watch, suicide watch, or constant supervision, as the result of his various assessments made upon intake, related to suicide and polysubstance abuse issues, QUATTRONE's staff and subordinates, including but not limited to JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL,

and FULLER, should have visually observe/d decedent without interruption at a post in close proximity to decedent, to notate every fifteen minutes in a logbook the activities of decedent for the preceding fifteen minutes, and to periodically verify signs of decedent's life, such as movement or audible speech, breathing, or snoring, all of which observations were required to have been notated in the logbook, which these defendants failed to do.

46.     Upon information and belief, QUATTRONE's subordinates and staff, including but not limited to JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES and/or JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER failed to fulfill their duties of increased supervision, constant supervision, constant watch or suicide watch, to verify that Plaintiff's decedent was alive and not in dire and immediate medical need, in failing to position a post adequately close to the cell door at CS2, said failures being the result of inadequate training, supervision, or retention by QUATTRONE, and/or the deliberate indifference of the JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER that were or should have been assigned to Plaintiff's decedent's post.

47.     Throughout the remainder of April 10, 2019 until the next morning, despite the numerous high risk issues raised upon his intake and screening by MEYER and DAMORE, and others' failure/s to refer Plaintiff's decedent to a hospital, to manage drug withdrawal or treat complications due to polysubstance abuse and

coupled this failure with the prescription of Olanzapine which further caused respiratory depression, failed to administer Keppra, and to adhere to the requirements imposed upon QUATTRONE and his subordinates, including but not limited to JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER, assigned to or that should have been assigned to Plaintiff's decedent's post to engage in increased supervision, constant supervision, constant watch or suicide watch and verify signs of life periodically, Plaintiff's decedent, GREGORY LEE GALLAWAY was neglected and ultimately not checked on until he was discovered dead in the morning hours of April 11, 2019.

48.     Upon information and belief, despite the high-risk assessment of Plaintiff's decedent, the suicide threats expressed, and/or the appearance of incapacitation due to drugs, Plaintiff's decedent was not examined by a physician

49.     Upon information and belief, decedent, GREGORY LEE GALLAWAY had been deceased for a period of several hours prior to being discovered.

50.     On April 11, 2019, the Office of the Erie County Medical Examiner, by Dr. Jay Stahl-Herz, performed an autopsy of decedent, noting, *inter alia*, that decedent was found face down in the mattress of his jail cell, that he had a history of polysubstance abuse, and the cause and manner of death were undetermined. In Dr. Stahl-Herz's opinion, the "possibility of toxicity due to an as yet unidentified substance consumed before entry into jail cannot be excluded."

16

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS CITY OF DUNKIRK, CITY OF DUNKIRK POLICE DEPARTMENT, CITY OF DUNKIRK POLICE OFFICER DENISE ZENTZ, NEGLIGENCE:**

51.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

52.     The CITY, DUNKIRK POLICE, and ZENTZ took custody of plaintiff's decedent, GREGORY LEE GALLAWAY upon his remand ordered by the Dunkirk City Court. The CITY, by its employees, agents, servants, and other subordinates, the DUNKIRK POLICE, and ZENTZ were advised and placed on notice of the decedent, GREGORY LEE GALLAWAY's urgent need for medical care and treatment, including the open court statements of concern and the drug screening tests communicated by Lee Ann Lazaroney, decedent's cousin's warnings, and the warnings by Plaintiff to ZENTZ.

53.     The CITY, during all times while Plaintiff's decedent, GREGORY LEE GALLAWAY was in its custody, had an obligation to procure medical treatment for Plaintiff's decedent.

54.     Despite the fact that subordinates of the CITY, including various employees and officers of the DUNKRIK POLICE and ZENTZ, had been advised of Plaintiff's decedent's medical needs, the CITY, DUNKIRK POLICE, and ZENTZ failed to take steps to procure medical treatment for Plaintiff's decedent, GREGORY LEE GALLAWAY.

55.     The CITY is vicariously liable for the negligence of its subordinates,

including but not limited to the DUNKIRK POLICE, and ZENTZ in failing to procure medical treatment for Plaintiff's decedent, GREGORY LEE GALLAWAY.

56.     The failures of the CITY and its subordinates, including the DUNKIRK POLICE and ZENTZ to procure medical treatment to Plaintiff's decedent, GREGORY LEE GALLAWAY, proximately caused and contributed to Plaintiff's decedent's death.

57.     As a result of the incidents hereinbefore described, the Plaintiff's decedent, GREGORY LEE GALLAWAY, sustained serious injuries as the result of the negligence of the CITY, DUNKIRK POLICE, and ZENTZ, where their joint, vicarious, and several failures to summon and procure medical treatment for Plaintiff's decedent, GREGORY LEE GALLAWAY, during his period in the custody of the CITY, caused him to ultimately die.

58.     Plaintiff's decedent, GREGORY LEE GALLAWAY sustained great pain and suffering and physical anguish.

59.     Wherefore, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS CITY OF DUNKIRK, CITY OF DUNKIRK POLICE DEPARTMENT, DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF DECEDENT'S FOURTEENTH AMENDMENT RIGHT TO ADEQUATE MEDICAL CARE, ACTIONABLE UNDER 42 U.S.C. § 1983:**

60.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

61.     At all times mentioned herein, defendants CITY and the DUNKIRK POLICE were public actors, a municipality and its law enforcement, administrative arm, acting under color of state law. Due to the policies, actions by officials within the CITY and/or DUNKIRK POLICE responsible for establishing the municipal policies relative to procuring medical care and treatment of pretrial detainees in the custody of the CITY and/or DUNKIRK POLICE, and/or a practice so widespread and consistent that, although not expressly authorized, constituted a custom or usage of which a supervising policymaker of the CITY and/or DUNKIRK POLICE must have been aware, and/or the failure of policymakers of the CITY and/or DUNKIRK POLICE to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal and/or law enforcement employees, and that, as a result of the policies, customs, or practices of the CITY and/or the DUNKIRK POLICE, the CITY and/or DUNKIRK POLICE caused the deprivation of Plaintiff's decedent's access to adequate medical care and treatment, in violation of his Fourteenth Amendment right to same, where the CITY and DUNKRIK POLICE, by and through their subordinates and employees, whom deliberately ignored various warnings raised by various persons, including Lee Ann Lazaroney, Plaintiff, and decedent's cousin, that decedent was in need of immediate medical assistance, and that the CITY and DUNKRIK POLICE failed to act, resulting in Plaintiff's decedent's pain and suffering, and ultimate death.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as

herein set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT CITY OF DUNKIRK POLICE OFFICER DENISE ZENTZ, FOURTEENTH AMENDMENT VIOLATION OF RIGHT TO ADEQUATE MEDICAL CARE, ACTIONABLE UNDER 42 U.S.C. § 1983:

62.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

63.     At all times relevant, ZENTZ was a state actor acting under color of law of a statute, ordinance, regulation, custom, or usage of the laws of the State of New York with respect to the custody, transport, and obligation to procure medical treatment for Plaintiff's decedent, GREGORY LEE GALLAWAY.

64.     ZENTZ, as an employee of the CITY and/or the DUNKIRK POLICE, had a duty once apprised and advised of Plaintiff's decedent, GREGORY LEE GALLAWAY's dire medical condition, to procure, notify others, or take steps to procure medical treatment for Plaintiff's decedent, particularly after Plaintiff, PATTIE ANN PUSATERI, expressed grave concerns about the immediate and dire health of her son, Plaintiff's decedent.

65.     In response, ZENTZ ignored the alarms raised as to the serious medical condition of Plaintiff's decedent, GREGORY LEE GALLAWAY, and recklessly failed to take any steps to procure medical treatment. Consequently, within less than twenty-four hours, Plaintiff's decedent, GREGORY LEE GALLAWAY died.

66.     In so acting or failing to act, ZENTZ's actions constituted a deprivation

of the rights and privileges of Plaintiff's decedent, GREGORY LEE GALLAWAY, secured and protected to him by the Fourteenth Amendment of the United States Constitution to not be deprived of adequate medical care as a pretrial detainee or inmate while in the custody of the CITY and/or the DUNKIRK POLICE, actionable under 42 U.S.C. § 1983.

67.     ZENTZ is sued herein this cause of action in her individual capacity.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS, CHAUTAUQUA COUNTY, ANGELA M. DAMORE, FNP-C, AND AMY MEYER, RN, MEDICAL MALPRACTICE:

68.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

69.     Upon transfer of Plaintiff's decedent from the CITY and/or DUNKIRK POLICE Lock-up to the Chautauqua County Jail, a jail that was maintained by the COUNTY, the COUNTY had a statutory duty, under New York Correction Law § 501 to provide a jail physician and/or medical care and treatment to Plaintiff's decedent, GREGORY LEE GALLAWAY while he was in the custody of QUATTRONE at the Chautauqua County Jail.

70.     Employees, independent contractors, and/or other subordinates and/or those rendering medical care to Plaintiff's decedent, GREGORY LEE GALLAWAY in fulfillment of the COUNTY's duty to provide medical care and treatment to Plaintiff's

decedent, GREGORY LEE GALLAWAY, including but not limited to MEYER and DAMORE, negligently failed to diagnose Plaintiff's decedent, GREGORY LEE GALLAWAY for complications due to polysubstance abuse caused by the ingestion of substance or substances legal and illegally obtained, despite the apparent and manifested symptoms on display, and as previously noted in open court by Lee Ann Lazaroney, as well as by relatives of Plaintiff's decedent; MEYER, DAMORE and others in the employ or subordinates of the COUNTY failed to refer Plaintiff's decedent to a hospital relative and/or to administer medication relative to his symptoms consistent with complications due to polysubstance abuse.

71.    Further, MEYER, DAMORE, and/or others in the employ and acting in furtherance of the duties of the COUNTY were in possession of actual and/or constructive knowledge of Plaintiff's decedent's extensive medical and psychiatric history, much of which was compiled and produced while he was an inmate at the Chautauqua County Jail, and were aware that Plaintiff's decedent had high medical and psychiatric risks requiring heightened care, including the risk of seizure, and same failed exercise reasonable care notwithstanding this information.

72.    Further, MEYER, DAMORE, and/or others in the employ and acting in furtherance of the duties of the COUNTY recorded and were advised by Plaintiff's decedent, GREGORY LEE GALLAWAY that he was suicidal and had admitted to drug use, and nevertheless failed to refer him to a hospital, or otherwise monitor his condition.

73.    Furthermore, MEYER, DAMORE, and/or others in the employ and

acting in furtherance of the duties of the COUNTY had actual and/or constructive knowledge of the results of Plaintiff's decedent's drug screening results taken in Dunkirk City Court just hours previous, and given Plaintiff's decedent's erratic behavior, failed to render adequate medical treatment or refer him to a hospital, or otherwise monitor his condition. Despite the awareness of multiple substances detected in Plaintiff's decedent's system, combined with his symptoms and suicidal expressions, MEYER, DAMORE, and/or others in the employ and acting in furtherance of the duties of the COUNTY jointly and/or severally failed to refer to Plaintiff's decedent to any form of medically supervised withdrawal, detoxification, or otherwise refer Plaintiff's decedent to a hospital.

74.     Additionally, while DAMORE prescribed Plaintiff's decedent, GREGORY LEE GALLAWAY Keppra on April 10, 2019, it was never administered by MEYER or DAMORE, notwithstanding the known risk of unstoppable seizures inherent in abrupt cessation of the use of Keppra.

75.     Additionally, upon information and belief, the negligence of MEYER and DAMORE is further evidenced by violations of Title 9 of the New York Code of Rules and Regulations 7010.2(c), Plaintiff's decedent, GREGORY LEE GALLAWAY was not immediately examined by a physician when, at the time of admission, he appeared to be intoxicated by drugs, such that he should have been under constant supervision or additional supervision.

76.     Additionally, the failures of MEYER, DAMORE, and others in the

employ or subordinates of the COUNTY to refer Plaintiff's decedent, GREGORY LEE GALLAWAY to a higher level of care which resulted in Plaintiff's decedent not receiving appropriate medical intervention and ultimately his death, as further evidenced, in part, by violations of 9 NYCRR § 7010.1(b), which requires prompt screening to identify serious or life-threatening medical conditions, particularly where drug or alcohol ingestion may obscure a serious physical deficiency or medical emergency, and violations of 9 NYCRR 7010.2(c) which requires every inmate who at the time of admission appears to be physically incapacitated due to drug or alcohol intoxication shall be examined immediately by a physician.

77.    As a result of these various failures constituting medical malpractice of MEYER, DAMORE, and/or others in the employ and acting in furtherance of the duties of the COUNTY, Plaintiff's decedent, GREGORY LEE GALLAWAY was improperly and inadequately treated, and was otherwise left untreated from approximately 7:40 p.m. on April 10, 2019, until he was discovered dead the following morning, on April 11, 2019.

78.    As a result of the joint and several failures of the COUNTY, MEYER, DAMORE and others in the employee of and subordinates of the COUNTY concerning the provision of medical care and treatment to Plaintiff's decedent, GREGORY LEE GALLAWAY was caused to die and sustain great pain and suffering and physical anguish.

79.    Upon information and belief, the COUNTY engaged in a negligent

24

practice in failing to provide and make available a jail physician, as it was statutorily obligated to, either as a matter of practice or in the instant case.

80.    Upon information and belief, MEYER, DAMORE, and the COUNTY by and through its subordinates and/or physician and other staff failed to order constant, active, or increased supervision, resulting in the inadequate supervision of Plaintiff's decedent, GREGORY LEE GALLAWAY, resulting in his death.

81.    The COUNTY is vicariously liable for the negligence of its subordinates as set forth in the preceding paragraphs.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT, CHAUTAUQUA COUNTY, NEGLIGENCE:

82.    Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

83.    Plaintiff's decedent, GREGORY LEE GALLAWAY entered into the Chautauqua County Jail, in the custody of QUATTRONE on April 10, 2019, following his Dunkirk City Court appearance, and period in the CITY lock-up. At all times, the COUNTY had a duty to maintain the jail, a duty of care to protect its prisoners from risks of harm that were reasonably foreseeable, and a duty to provide adequate and non-negligent medical care and treatment to prisoners, including to Plaintiff's decedent, GREGORY LEE GALLAWAY while he was an inmate of the Chautauqua County Jail.

84.      As a result of the negligent training, supervision, and retention, of its employees and subordinates who worked in the Chautauqua County Jail, the COUNTY negligently disregarded multiple rules, regulations, and protocols in the maintenance of the Chautauqua County Jail such that Plaintiff's decedent, GREGORY LEE GALLAWAY was not sent to a hospital or provided with heightened medical care when it became apparent to MEYER, DAMORE, and others in the employ service or subordinate to the COUNTY that he was in need of urgent medical care, and same additionally failed to order adequate increased supervision.

85.      As a result of the COUNTY's failure to train, supervise, and negligently retain MEYER, DAMORE, and/or other employees and/or subordinates, same failed to adequately supervise and monitor Plaintiff's decedent and take steps to ensure that he received adequate medical care and treatment, and, as a consequence of such failures in the training, supervision, and retention of said subordinates, Plaintiff's decedent was effectively left unattended, and did suffer and die as a result of the aforesaid negligence.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST CHAUTAUQUA COUNTY, FOURTEENTH AMENDMENT VIOLATION OF RIGHT TO ADEQUATE MEDICAL CARE, ACTIONABLE UNDER 42 U.S.C. § 1983:**

86.      Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

87.     At all times mentioned herein, defendant COUNTY was a public actor, a municipality, acting under color of state law. Due to the policies, actions by officials within the COUNTY responsible for establishing the municipal policies relative to procuring medical care and treatment of pretrial detainees at the Chautauqua County Jail and in the custody of QUATTRONE, and/or due to practices of inmate neglect so widespread and consistent that, although not expressly authorized, constituted a custom or usage of which a supervising policymaker of the COUNTY must have been aware, and/or the failure of policymakers of the COUNTY to provide adequate training or supervision to subordinates relative to medical care and treatment of inmates at the Chautauqua County Jail to such an extent that it amounts to deliberate indifference to the Fourteenth Amendment rights to adequate medical care of inmates of the Chautauqua County Jail, and that, as a result of the policies, customs, or practices of the COUNTY, Plaintiff's decedent, GREGORY LEE GALLAWAY was in fact deprived of access to adequate medical care and treatment, where MEYER, DAMORE, and other subordinates of the COUNTY responsible for medical care and treatment failed to refer to decedent to a physician, to refer to a hospital, and to take adequate steps, failing to act and to treat decedent which caused his pain and suffering, and ultimate death.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST ANGELA M. DAMORE, FNP-C, AND AMY MEYER, RN, FOURTEENTH AMENDMENT VIOLATION OF RIGHT TO ADEQUATE MEDICAL CARE, ACTIONABLE UNDER 42 U.S.C. § 1983:**

88.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

89.     At all times herein mentioned, DAMORE and MEYER were state actors acting under color of a statute, ordinance, regulation, custom or usage of the laws of New York State with respect to the care and treatment of Plaintiff's decedent, GREGORY LEE GALLAWAY while he was a pretrial detainee in the custody of QUATTRONE.

90.     MEYER and DAMORE, as employees, agents, or other subordinates of the COUNTY with respect to fulfilling the COUNTY's duty to provide medical care and treatment to Plaintiff's decedent, GREGORY LEE GALLAWAY, undertook the duty to render to the decedent medical care and treatment.

91.     MEYER and DAMORE were familiar with Plaintiff's decedent's history of substance abuse, his medical history, and psychiatric history, as well as his previous and present high-risk factors, and Plaintiff's decedent acknowledged, and defendants MEYER and DAMORE were aware or should have been aware of his recent drug use.

92.     MEYER and DAMORE were also aware of Plaintiff's decedent's medical and psychiatric high-risk factors upon intake on April 10, 2019, as well as his suicide threats.

93.     MEYER and DAMORE had knowledge of Plaintiff's decedent,

GREGORY LEE GALLAWAY medically serious condition/s, it being noted by them

that Plaintiff's decedent suffered from potential opiate withdrawal, was expressing

threats of suicide, was slurring his words and appearing lethargic, as well as

admitting to drug use.   MEYER and DAMORE were also aware of Plaintiff's

decedent's medical and psychiatric history, including high risk indications.

94.     Mindful and with actual knowledge of Plaintiff's decedent, GREGORY

LEE GALLAWAY's medical and/or psychiatric serious condition/s, DAMORE and

MEYER ignored the Plaintiff's decedent's medical and psychiatric condition/s,

disregarded rules and regulations, and failed to act, largely doing nothing but

prescribing Keppra (anti-seizure medication), a multivitamin, and Olanzapine (an

anti-psychotic) instead of referral to a hospital, adequate medically supervised drug

withdrawal management and supervision, drug testing, medical monitoring, or other

medically reasonable and necessary steps to treat Plaintiff's decedent for his

medically serious condition/s, and/or failing to order or request the ordering of

heightened or increased supervision.

95.     Additionally, while DAMORE prescribed Plaintiff's decedent,

GREGORY LEE GALLAWAY Keppra on April 10, 2019, it was never administered

by MEYER or DAMORE, notwithstanding the well-known risk of unstoppable

seizures inherent in abrupt cessation of the use of Keppra.

96.     DAMORE and MEYER jointly and severally failed to act while actually

aware of a substantial risk that serious harm to Plaintiff's decedent, GREGORY LEE GALLAWAY would result by their failure/s to act, and the prescriptions of DAMORE and MEYER were so objectively inadequate to treat decedent as to constitute deliberate indifference.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

### AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST CHAUTAUQUA COUNTY SHERIFF, JAMES B. QUATTRONE, STATE LAW NEGLIGENCE UNDER NEW YORK CORRECTION LAW § 500-C:

97.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

98.     Plaintiff's decedent, GREGORY LEE GALLAWAY entered into the custody of QUATTRONE on April 10, 2019, following his Dunkirk City Court appearance, and period in the CITY lock-up. At that point, QUATTORNE had a duty under New York Correction Law § 500-c to safely keep and make necessary medical care available to Plaintiff's decedent.

99.     As a result of the QUATTRONE's negligent training, supervision, and retention, of personnel who worked in the Chautauqua County Jail, including but not limited to his sheriff's deputies, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, FULLER, MEYER, DAMORE, and other subordinates, whom negligently disregarded duties, rules,

regulations including but not limited to Title 9 of the New York Code of Rules and Regulations binding on QUATTRONE, and protocols in the supervision of Plaintiff's decedent, GREGORY LEE GALLAWAY, while he was an inmate at the Chautauqua County jail to safely keep and make necessary medical care available to him.

100.     As a result of the QUATTRONE's failure to train, supervise, and negligent retention of JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, FULLER, MEYER, DAMORE, and other subordinates, QUATTRONE failed to adequately supervise and monitor, or cause the same of, Plaintiff's decedent while he was on suicide watch, constant watch, active supervision, constant supervision, or increased supervision, to verify signs of life periodically and/or timely in order to render assistance or seek medical aid, all during a time when said subordinates knew or should have known of Plaintiff's decedent's medical and psychiatric conditions, and, as a consequence of such failures in the training, supervision, and retention of said subordinates, Plaintiff's decedent was inadequately supervised, signs of life were not periodically verified for multiple hours while he was in CS2, until he was ultimately discovered dead in his cell at CS2, all indicative of QUATTRONE's aforesaid negligence.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT
CHAUTAUQUA COUNTY SHERIFF, JAMES B. QUATTRONE,
DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN
VIOLATION OF DECEDENT'S FOURTEENTH AMENDMENT RIGHT TO
ADEQUATE MEDICAL CARE, ACTIONABLE UNDER 42 U.S.C. § 1983:**

101.        Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-
alleges each

factual allegation contained in the preceding paragraphs with the same force and

effect as if set forth fully herein.

102.        At all times mentioned herein, defendant QUATTRONE was a

public law enforcement actor, acting under color of state law. Due to the policies and

actions of QUATTRONE relative to procuring medical care and treatment of pretrial

detainees in the custody of QUATTRONE at the Chautauqua County Jail, and/or a

practice so widespread and consistent that, although not expressly authorized,

constituted a custom or usage of which QUATTRONE must have been aware, and/or

the failure of QUATTRONE to provide adequate training or supervision to

subordinates to such an extent that it amounts to deliberate indifference to the rights

of those who come into contact with QUATTRONE's subordinates at the Chautauqua

County Jail, that, as a result of the policies, customs, or practices of QUATTRONE,

Plaintiff's decedent, GREGORY LEE GALLAWAY was deprived of access to adequate

medical care and treatment in the failure to train subordinates, including JOHN

AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES

and/or JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL

PERSONNEL with respect to constant watch, suicide watch, constant supervision or increased supervision, and requesting or summoning medical care and treatment for inmates, such as Plaintiff's decedent, when under QUATTRONE's and his subordinate's care and within his custody.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

**AS AND FOR A TENTH CAUSE OF ACTION AGAINST JOHN AND/OR JANE DOE(S) SAID BEING CHAUTAUQUA COUNTY SHERIFF DEPUTIES AND JOHN AND/OR JANE DOE(S) SAID BEING CHAUTAUQUA COUNTY JAIL PERSONNEL, AND CHAUTAUQUA COUNTY SHERIFF SERGEANT FULLER, FOURTEENTH AMENDMENT VIOLATION OF RIGHT TO ADEQUATE MEDICAL CARE, ACTIONABLE UNDER 42 U.S.C. § 1983:**

103.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

104.     As a pretrial detainee, Plaintiff's decedent, GREGORY LEE GALLAWAY, was entitled to adequate medical care and treatment. Once Plaintiff's decedent was placed in a suicide gown, in his cell at CS2, on constant watch, suicide watch, constant supervision, or active supervision, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER were aware of the high medical and psychiatric risks associated with Plaintiff's decedent.

105.     JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA

33

COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER evidenced their deliberate indifference by failing to verify signs of life of Plaintiff's decedent periodically, to maintain constant supervision, all during a time when the JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER were obligated to uninterruptedly and personally visually observe Plaintiff's decedent, at a post in close proximity to Plaintiff's decedent while in his cell at CS2.

106.        Notwithstanding the medically serious condition of Plaintiff's decedent, GREGORY LEE GALLAWAY, that JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER were aware of, including potential drug withdrawal, suicidal expressions, and symptoms and actions consistent with being under the influence of or intoxicated by drugs, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, ad FULLER recklessly and with deliberate indifference, ignored Plaintiff's decedents needs, failed to monitor decedent despite being obligated to do the same, and recklessly took no action to summon or obtain medical assistance for Plaintiff's decedent, notwithstanding he was under their constant watch or suicide watch while in cell CS2.

107.     As a result of the deliberate indifference of JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES, JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and FULLER the health and status of Plaintiff's decedent, GREGORY LEE GALLAWAY was not checked on or inquired into until he had been dead for a length of time, which proximately led to and caused his injuries and death.

WHEREFORE, Plaintiff prays for judgment as herein set forth below.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST JOHN AND/OR JANE DOE(S) AND JOHN AND/OR JANE DOE(S) SAID BEING CHAUTAUQUA COUNTY JAIL PERSONNEL SAID BEING CHAUTAUQUA COUNTY SHERIFF DEPUTIES, STATE LAW NEGLIGENCE:

108.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

109.     JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES and/or JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL had a duty to safely keep Plaintiff's decedent, GREGORY LEE GALLAWAY, and they, severally and jointly, breached this duty by failing to adequately supervise, failed to monitor, failed to intervene, failed to assist and summon medical assistance for Plaintiff's decedent, while he was a known medical and psychiatric risk, as evidenced by the fact that he had been placed in a suicide gown, and Sergeant Fuller had been alerted by medical staff that Plaintiff's decedent had in fact threatened suicide.

110.     JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY
SHERIFF DEPUTIES and/or JOHN AND/OR JANE DOE(S) said being
CHAUTAUQUA COUNTY JAIL PERSONNEL jointly and severally failed to
maintain constant, increased, active, or general supervision of Plaintiff's decedent,
GREGORY LEE GALLOWAY in order to prevent or respond to his fast deteriorating
health condition that led to death.

111.     Upon information and belief, further evidence of negligence is
demonstrated where constant supervision was prescribed and/or mandated where
Plaintiff's decedent, GREGORY LEE GALLOWAY was understood to be either
incapacitated due to drugs, and/or drug withdrawal, and/or a suicide risk, and/or
under the influence of drugs, among other medical and mental health risks known,
reported to, or should have been known by JOHN AND/OR JANE DOE(S) said being
CHAUTAUQUA COUNTY SHERIFF DEPUTIES and/or JOHN AND/OR JANE
DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, and that, in
violation of Title 9 of the New York Code of Rules and Regulations, and other
directives, regulations, rules, and policies prescribed by, including but not limited to,
the COUNTY, and/or QUATTRONE, and/or the Commission of Corrections, JOHN
AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES
and/or JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL
PERSONNEL failed to adequately supervise decedent while he was in his jail cell,
failed to monitor him, failed to intervene, failed to maintain a clear view of decedent,
to keep him safe, summon or refer him for medical assistance, and take reasonable,

required, and necessary measures to safekeep Plaintiff's decedent that JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES and/or JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL with all those common law and statutory duties they were required to perform relative to the safekeeping and care of Plaintiff's decedent.

112.     As a result of the negligence of JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY SHERIFF DEPUTIES and/or JOHN AND/OR JANE DOE(S) said being CHAUTAUQUA COUNTY JAIL PERSONNEL, the health and status of Plaintiff's decedent, GREGORY LEE GALLAWAY was not checked on, he was not adequately supervised, and he was not discovered until he had been dead for a length of time, and the several and collective failures of these defendants proximately caused his injuries and death.

WHEREFORE, Plaintiff prays for judgment as herein set forth below.

### AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST CHAUTAUQUA COUNTY SHERIFF SERGEANT FULLER, STATE LAW NEGLIGENCE:

113.     Plaintiff, PATTIE ANN PUSATERI, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

114.     Plaintiff's decedent, GREGORY LEE GALLAWAY entered into the custody of QUATTRONE on April 10, 2019, following his Dunkirk City Court appearance, and period in the CITY lock-up. FULLER was a subordinate and

employee of QUATTRONE. At that point, FULLER had a duty to safely keep and make necessary medical care available to Plaintiff's decedent.

115.     As a result of FULLER's negligence whom negligently disregarded duties, rules, regulations including but not limited to Title 9 of the New York Code of Rules and Regulations binding on QUATTRONE, and protocols in the supervision of Plaintiff's decedent, GREGORY LEE GALLAWAY, while he was an inmate at the Chautauqua County jail, failed to safely keep and make necessary medical care available to him.

116.     As a result of FULLER's failure to adequately supervise and monitor, or cause the same of, Plaintiff's decedent while he was on suicide watch, constant watch, active supervision, constant supervision, or increased supervision, to verify signs of life periodically and/or timely in order to render assistance or seek medical aid, all during a time when said subordinates knew or should have known of Plaintiff's decedent's medical and psychiatric conditions, and, as a consequence of such failures in the training, supervision, and retention of said subordinates, Plaintiff's decedent was effectively left unattended and inadequately supervised, failing to verify signs of life, until he was ultimately discovered dead in his cell, and that he had been dead in his cell for a significant length of time, up to several hours, indicative of FULLER's aforesaid negligence.

WHEREFORE, Plaintiff, PATTIE ANN PUSATERI prays for judgment as herein set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For general damages in a sum according to proof;
2. For special damages in a sum according to proof;
3. For punitive damages against the individual named Defendants in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
5. For any and all statutory damages allowed by law;
6. For costs of suit herein incurred; and
7. For such other and further relief as this Court deems just and proper.

DATED:       Buffalo, New York            **VANDETTE PENBERTHY LLP**
             April 9, 2020
                                          By:___*James M. VanDette*___
                                          James M. VanDette, Esq.
                                          227 Niagara Street
                                          Buffalo, New York 14201
                                          jvandette@vanpenlaw.com