UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATTIE ANN PUSATERI, as Administrator for the Estate of
GREGORY LEE GALLAWAY,

                              Plaintiff,

v.

CITY OF DUNKIRK,
CITY OF DUNKIRK POLICE DEPARTMENT,          Civ. No.: 1:20-cv-00427
CITY OF DUNKIRK POLICE OFFICER
DENISE ZENTZ,
CHAUTAUQUA COUNTY,
CHAUTAUQUA COUNTY SHERIFF
JAMES B. QUATTRONE,
JOHN AND/OR JANE DOE(S) said being
CHAUTAUQUA COUNTY SHERIFF DEPUTIES,
CHAUTAUQUA COUNTY SHERIFF
SERGEANT FULLER,
JOHN AND JANE DOE(S) said being
CHAUTAUQUA COUNTY JAIL PERSONNEL,
ANGELA M. DAMORE, FNP-C,
AMY MEYER, RN,
CHAUTAUQUA COUNTY SHERIFF'S DEPUTY TANNER
DELAHOY bearing Badge Number 5100,
CHAUTAUQUA COUNTY SHERRIFF'S DEPUTY ROBERTS
bearing Badge Number 5108,
CHAUTAUQUA COUNTY SHERRIFF'S DEPUTY ROBERT
BURRELL bearing Badge Number 5060,
CHAUTAUQUA COUNTY SHERRIFF'S SERGEANT
WESTFAHL bearing Badge Number 671,

                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF THE
COUNTY OF CHAUTAUQUA DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... i

PRELIMINARY STATEMENT ..................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 3

PLAINTIFF'S FACTUAL ALLEGATIONS..................................................................... 4

    A.  Plaintiff's Allegations Against The County................................................... 4

    B.  Plaintiff's Allegations Against Sheriff Quattrone......................................... 6

    C.  Plaintiff's Allegations Against Meyer And Damore ..................................... 7

    D.  Plaintiff's Allegations Against Sergeant Fuller........................................... 8

    E.  Plaintiff's Allegations Against Sergeant Westfahl....................................... 9

    F.  Plaintiff's Allegations Against Deputy Delahoy......................................... 10

    G.  Plaintiff's Allegations Against Deputy Roberts ......................................... 11

    H.  Plaintiff's Allegations Against Deputy Burrell ........................................... 12

ARGUMENT ........................................................................................................... 13

I.    The Complaint Fails To Plausibly Allege Proximate Cause........................... 13

II.    Plaintiff Fails To State Cognizable *Monell* Claims Against the County
    and Sheriff Quattrone .................................................................................. 17

III.    Plaintiff's Section 1983 "Official Capacity" Claims Are Redundant............... 23

IV.    The Complaint Fails to State A Deliberate Indifference Claim Against
    Damore and Meyer ...................................................................................... 24

V.    The Complaint Does Not Allege Sufficient Personal Involvement Under
    Section 1983 ............................................................................................... 25

    A. Sherriff Quattrone Had No Personal Involvement.................................... 26

    B. Sergeant Fuller's Alleged Personal Involvement Is Insufficient................. 27

    C. Sergeant Westfahl's Alleged Personal Involvement Is Insufficient ........... 28

D. Deputy Delahoy's Alleged Personal Involvement Is Insufficient ............... 29

E. Deputy Burrell's Alleged Personal Involvement Is Insufficient ................. 29

F. Deputy Roberts' Alleged Personal Involvement Is Insufficient ................. 29

VI.    The Individually Named Defendants Are Entitled To Qualified Immunity ...... 30

VII.   Plaintiff's Allegations Concerning the County and Sheriff Quattrone's Alleged Negligent Training, Supervision, and Retention Under New York State Law Must be Dismissed ....................................................................................... 31

VIII.  Plaintiff's Eleventh Cause of Action Must Be Dismissed As Duplicative ....... 32

IX.    The County Cannot Be Held Vicariously Liable For The Allegedly Negligent Acts/Omissions Of Sheriff Quattrone ............................................................. 33

X.     Plaintiff's Medical Malpractice Claims Should Be Dismissed Because She Has Repeatedly Failed To Comply With CPLR § 3012-a .............................. 33

XI.    Plaintiff's Fourth, Fifth, Eighth, and Thirteenth Causes of Action Should be Dismissed Because Plaintiff Has Not Plausibly Alleged Proximate Cause ... 34

CONCLUSION ....................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases:**                                                                        **Page:**

*Ashely v. City of New York*, 7 A.D.3d 742 (2d Dept. 2004) ...................................... 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 26

*Avgerinos v. Palmyra-Macedon Central School Dist.*, 690 F.Supp.2d 115 (W.D.N.Y. 2010) ......................................................................................................................... 3

*Baines v. Masiello*, 288 F.Supp.2d 376 (W.D.N.Y.2003) ........................................ 23

*Bark v. Chacon*, 2011 WL 1884691 (D. Colo. 2011) ................................................. 21

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997) ................. 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 3

*Canton v. Harris*, U.S. 378 (1989) ........................................................................... 19

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir.2002) .................................... 3

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ........................................................ 25

*Connick v. Thompson*, 563 U.S. 51 (2011) .............................................................. 22

*Crowhurst v. Szczucki*, 2017 WL 519262 (S.D.N.Y. 2017) ...................................... 34

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) ......................................................... 17

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ......................................... 20

*Estelle v. Gamble*, 429 U.S. 97 (1976) .................................................................... 23

*Freeland v. Erie County*, 122 A.D.3d 1348 (4th Dep't 2014) .................................... 33

*Galloway v. Town of Greece*, 732 F.Supp.2d 195 (W.D.N.Y. 2010) ........................ 24

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013) ............................... 30

*Graham v. Knebel*, 2009 WL 4334382 (S.D.N.Y. 2009) ........................................... 3

*Hardy v. Erie County*, 2012 WL 1835624 (W.D.N.Y. 2012) ..................................... 20

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................................. 30

*Harrison v. Barkley,* 219 F.3d 132 (2d Cir.2000) ...................................................... 25

*Hernandez v. Sposato*, 2014 WL 3489818 (E.D.N.Y. 2014) .................................... 27

*Hill v. Curcione*, 657 F.3d 116 (2d Cir. 2011) .......................................................... 24

*Kelsey v. City of New York*, 306 Fed.Appx. 700 (2d Cir. 2009).............. 18, 28, 29, 31

*Kentucky v. Graham*, 473 U.S. 159 (1985) .............................................................. 23

*Marashian v. City of Utica*, 214 A.D.2d 1034 (4th Dep't 1995)................................. 33

*Miller v. County of Monroe*, 2013 WL 2180738 (W.D.N.Y. 2013)............................. 20

*Montalvo v. Lamy*, 139 F.Supp.3d 597 (W.D.N.Y. 2015) .......................................... 27

*Mosey v. County of Erie*, 117 A.D.3d 1381 (4th Dep't 2014) ................................... 33

*Mustafa v. Povero*, 2017 WL 4169339 (W.D.N.Y. 2019)........................................... 31

*Newton v City of New York*, 681 F.Supp.2d 473 (S.D.N.Y. 2010)............................ 31

*Paulemon v. Tobin*, 30 F.3d 307 (2d Cir.1994) ......................................................... 3

*Perrone v. Monroe Cnty. Sheriff Patrick O'Flynn*, 2015 WL 7776930 (W.D.N.Y. 2015) ................................................................................................................................ 32

*Pierce v. Chautauqua Cty.*, 2007 WL 2902954 (W.D.N.Y. 2007)............................. 27

*Plair v. City of New York*, 789 F.Supp.2d 459 (S.D.N.Y. 2011)................................ 19

*Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992) .............................. 18, 31

*Roberson v. Wyckoff Heights Medical Center*, 123 A.D.3d 791 (2d Dep't 2014) ..... 34

*Sanchez-Vazquez v. Rochester City Sch. Dist.*, 2012 WL 2856824 (W.D.N.Y. 2012). ................................................................................................................................. 3

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) ....................................................... 19

*Saxon v. Attica Medical Dept.,* 468 F.Supp.2d 480 (W.D.N.Y. 2007)....................... 26

*Seils v. Rochester City School District*, 192 F.Supp.2d 100 (W.D.N.Y. 2002) ......... 13

*Sloane v. Borawski*, 64 F.Supp.3d 473 (W.D.N.Y. 2014).......................................... 25

*Stokes v. Nestle Purina Co.*, 2012 WL 3746810 (W.D.N.Y. 2012)............................ 3

*Swain v. Brookdale Sr. Living*, 2011 WL 1213600 (W.D.N.Y. 2011)......................... 3

*Sweat v. Butler*, 90 F.Supp.3d 773 (W.D. Tenn. 2015)............................................ 19

*Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999).............................................. 30

*Thomas v. City of New York*, 2015 WL 9412543 (E.D.N.Y. 2015) ........................... 20

*Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999)........................................ 13

*Trisvan v. County of Monroe*, 26 A.D.3d 875 (4th Dep't 2006) ................................ 33

*U.S. v. Bonner*, 2020 WL 1963159 (W.D.N.Y. 2020) ............................................... 17

*U.S. v. Erie Cnty.*, 724 F.Supp.2d 357 (W.D.N.Y. 2010)........................................... 17

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996).......................................................... 23

*Worrell v. City of New York*, 2014 WL 1224257 (E.D.N.Y. 2014)............................. 20

*Zuk v. Onondaga Cnty.*, 2010 WL 3909524 (N.D.N.Y. 2010) .................................. 24

**Statutes:**                                                                                  **Page:**

42 U.S.C. § 1983 ................................................................................ *in passim*

CPLR § 3012-a ................................................................................ 33

New York Correction Law § 500-c ........................................................ 33

New York Estates, Powers and Trusts Law § 5-4.1 ................................ 35

F.R.C.P. 12(b)(6) ............................................................................ *in passim*

## PRELIMINARY STATEMENT

On April 11, 2019, Plaintiff's Decedent, Gregory Lee Galloway ("Galloway"), passed away while being held at the Chautauqua County Jail (the "Jail").  The cause and manner of Galloway's death remain undetermined and notably, Plaintiff does not plead otherwise.

Plaintiff's Amended Complaint (Doc. No. 24, hereinafter the "Complaint") unsuccessfully attempts to manufacture 42 U.S.C. § 1983 causes of action against the County of Chautauqua (the "County"), Chautauqua County Sheriff James B. Quattrone ("Sheriff Quattrone"), Chautauqua County Sheriff's Sergeant Fuller ("Sergeant Fuller"), Chautauqua County Sheriff's Sergeant Westfahl ("Sergeant Westfahl"), Chautauqua County Sheriff's Deputy Tanner Delahoy ("Deputy Delahoy"), Chautauqua County Sheriff's Deputy Roberts ("Deputy Roberts"), Chautauqua County Sheriff's Deputy Robert Burrell ("Deputy Burrell"), Angela Damore, FNP-C ("Damore"), Amy Meyer, RN ("Meyer"), and various John/Jane Doe Defendants (collectively the "County Defendants"), by equating a single instance of alleged negligence and/or medical malpractice to a constitutional violation; to wit, an unconstitutional policy of exhibiting deliberate indifference to the serious medical needs of pre-trial detainees at the Jail.

The Complaint alleges that Galloway was placed under constant supervision at the Jail "as a result of various assessments made upon intake, related to suicide and polysubstance abuse issues…" (Complaint ¶ 59).  However, this bald and conclusory allegation is belied by the very materials annexed to and incorporated by reference in the Complaint; specifically, the Inmate Floor File and the Opiate

1

Withdrawal Assessment and Clinical Opiate Withdrawal Scale concerning Galloway. (Doc. No. 24-1; Veech Decl., Ex. B).

Liberally construed, the Complaint merely alleges that, after being processed into the Jail on April 10, 2019, Galloway was placed "on watch" due to the explicit threats of self-harm that he made to Jail personnel.   The forty-nine (49) page Complaint does not contain a single plausible fact from which it can be inferred that any of the County Defendants actually knew that Galloway was at risk of overdosing or experiencing "respiratory depression" while in Jail custody, or that any of the County Defendants acted with the requisite "deliberately indifferent" state of mind to a known risk to Galloway's health or safety.

Rather, Plaintiff's claims against the County Defendants sound in a single instance of common law negligence / medical malpractice for: (1) allegedly failing to recognize that Galloway was experiencing "respiratory depression" due to ingesting a "suicide cocktail" of drugs before entering the Jail (which is belied by the autopsy report and related toxicology testing, and Galloway's denials of same to Jail personnel); and/or (2) failing to properly prescribe or administer medications to Galloway in the Jail.   This is patently insufficient to state plausible Section 1983 deliberate indifference to medical needs claims.

Accordingly, Plaintiff's sixth, seventh, ninth, tenth, and twelfth causes of action should be dismissed against the County Defendants in their entireties and with prejudice.   Further, Plaintiffs fourth, fifth, eighth, eleventh, and thirteenth causes of action should also be dismissed, as set forth below.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), this Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Sanchez-Vazquez v. Rochester City Sch. Dist.*, 2012 WL 2856824, at *3 (W.D.N.Y. 2012).  However, the allegations must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Stokes v. Nestle Purina Co.*, 2012 WL 3746810, at *2 (W.D.N.Y. 2012) (quoting *Twombly*).  In other words, "plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Swain v. Brookdale Sr. Living*, 2011 WL 1213600, at *1 (W.D.N.Y. 2011) (citations omitted).  Accordingly, "conclusory statements and legal conclusions are insufficient to state a plausible claim for relief." *Graham v. Knebel*, 2009 WL 4334382, at *2 (S.D.N.Y. 2009) (citations omitted).

Further, under Rule 12(b), the "complaint includes…any statements or documents incorporated into it by reference." *Avgerinos v. Palmyra-Macedon Central School Dist.*, 690 F.Supp.2d 115, 123 (W.D.N.Y. 2010) (quoting *Paulemon v. Tobin*, 30 F.3d 307, 308-309 (2d Cir. 1994).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id*. (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)).

3

## PLAINTIFF'S FACTUAL ALLEGATIONS

### A.  Plaintiff's Allegations Against The County.

Plaintiff's fourth cause of action alleges that the County, through Damore and Meyer, committed medical malpractice under New York State law by: (1) failing to timely refer Galloway to a physician and/or hospital; (2) failing to diagnose Galloway for "complications due to polysubstance abuse"; and (3) failing to properly prescribe and/or administer medications to Galloway.  (¶¶ 90-93, 95-99[1]).  Plaintiff's fourth cause of action further claims that the County enacted a "negligent practice" and failed to provide and make available a physician at the Jail.  (¶ 105).

Plaintiff's fifth cause of action alleges that the County negligently trained, supervised, and retained its employees and subordinates who worked at the Jail, including Meyer and Damore, which caused them to "negligently disregard multiple rules, regulations, and protocols" and "fail[] to adequately supervise and monitor [Galloway] and take steps to ensure that he received adequate medical care and treatment".  (¶¶ 110-111).

Plaintiff's eleventh cause of action alleges that Deputy Roberts, Deputy Delahoy, Deputy Burrell, Sergeant Westfall, Sergeant Fuller, and the Jane/John Doe Defendant(s), while acting within the course and scope of their duties at the Jail, committed acts of common law negligence under New York State law by failing to adequately monitor and supervise Galloway; failing to intervene; failing to assist and summon medical assistance for Galloway; failing to maintain "constant watch" of

---

[1] Unless otherwise noted, references to paragraph numbers refer to Plaintiff's Amended Complaint (Doc. No. 24).

Galloway; and failing to verify that Galloway was exhibiting signs of life. (¶¶ 51, 67, 140-142).

Plaintiff's thirteenth cause of action alleges a wrongful death under New York State law. (¶¶153-156).

With respect to Plaintiff's Section 1983 *Monell* claim against the County, Plaintiff's sixth cause of action alleges that the County, through Sheriff Quattrone, had a policy or practice of depriving inmates at the Jail of access to adequate medical care and treatment. (¶ 114). Plaintiff further alleges that the County, through Sheriff Quattrone, with deliberate indifference, failed to train Sergeant Fuller, Sergeant Westfahl, Deputy Delahoy, Deputy Roberts, Deputy Burrell, and the Jane/John Doe Defendant(s) to verify signs of life of inmates under "constant watch," and visually observe inmates under "constant watch" without interruption at a post in close proximity. (¶¶ 60-61, 114).

However, Plaintiff concedes that the County, through Sheriff Quattrone, had a policy under which inmates at the Jail who were placed on "constant watch" were placed under "direct supervision by [Jail personnel] permanently occupying an established post in close proximity…such as to maintain a continuous clear view…and the ability to…intervene in response to situations or behavior observed which threaten [their] health or safety…" (¶¶ 54, 56, 60). As such, Plaintiff's sixth cause of action merely alleges that the County Defendants who came into contact with Galloway between April 10, 2019 and April 11, 2019 failed to properly carry out their duties in this specific instance. (¶ 114).

### B. Plaintiff's Allegations Against Sheriff Quattrone.

Plaintiff alleges that Sheriff Quattrone was responsible for the day-to-day operations of the Jail, the safekeeping of inmates, and the training, supervision, hiring, and retention of those Sheriff's sergeants, lieutenants, captains, and deputies who were involved in the custody, safekeeping, and detention of Galloway between April 10, 2019 and April 11, 2019.  (¶ 10).  Plaintiff further alleges that Sheriff Quattrone negligently failed to train Sergeant Fuller, Sergeant Westfahl, Deputy Delahoy, Deputy Roberts, Deputy Burrell, and the Jane/John Doe Defendants to: (1) verify signs of life of inmates under "constant watch"; and (2) to visually observe inmates under "constant watch" without interruption at a post in close proximity.  (¶ 61).

Plaintiff's eighth cause of action alleges that as a result of Sheriff Quattrone's "negligent training, supervision, and retention of Jail personnel," Galloway was inadequately supervised and not afforded necessary medical care.  (¶¶ 130-131).

With respect to Plaintiff's Section 1983 claim against Sheriff Quattrone, Plaintiff's ninth cause of action alleges that Sheriff Quattrone, in his personal capacity, exhibited deliberate indifference to Galloway's medical needs by: (1) promulgating inadequate policies relative to "procuring medical care and treatment" and "constant watch and constant supervision of pretrial detainees"; and (2) failing to adequately train or supervise Jail personnel with respect to "compliance with Quattrone's or the County Sheriff's General Orders concerning, inter alia, Housing Unit Supervision, screenings, assessments, intoxication and withdrawal, among others…failures to train included failing to train said defendants to verify signs of life of inmates under constant watch or constant supervision in compliance with Commission of Corrections

authority, and in failing to comply with Quattorone's own policies…" (¶¶ 60-61, 133).

Plaintiff does not allege that Sheriff Quattrone ever came into contact with Galloway between April 10, 2019 and April 11, 2019.

### C. Plaintiff's Allegations Against Meyer And Damore.

In addition to Plaintiff's fourth cause of action alleging medical malpractice under New York State law, Plaintiff's seventh cause of action alleges that Damore and Meyer, in their personal capacities, exhibited deliberate indifference to Galloway's medical needs by: (1) failing to timely refer Galloway to a physician and/or hospital; (2) failing to diagnose Galloway for "complications due to polysubstance abuse"; and (3) failing to properly prescribe and/or administer medication to Galloway. (¶¶ 14, 46-49, 51, 58 118-126).

Specifically, Plaintiff alleges that Damore and/or Meyer failed to recognize that Galloway was exhibiting signs of opioid withdrawal / "polysubstance intoxication" on April 10, 2019; improperly ordered and administered Olanzapine to Galloway while he was experiencing "polysubstance intoxication"; and failed to properly administer Keppra to Galloway. (¶¶ 46, 119-126).

In hopes of transforming these allegations of negligence / medical malpractice into Section 1983 claims of deliberate indifference to medical needs, Plaintiff merely surmises that Meyer and Damore acted intentionally to ignore the risk of harm to Galloway from "polysubstance intoxication," or had actual or constructive knowledge of Galloway's propensity for illicit drug use and/or his April 10, 2019 drug screen (which was undisputedly performed by Dunkirk City Court personnel) and recklessly failed to act in response to the risk of harm to Galloway from "polysubstance intoxication". (¶¶

14-15, 51, 94, 118, 125).

### D.  Plaintiff's Allegations Against Sergeant Fuller.

Plaintiff alleges that Sergeant Fuller was involved in the supervision and safekeeping of Galloway at the Jail from April 10, 2019 through April 11, 2019.  (¶ 13). Plaintiff further alleges that Sergeant Fuller ordered Galloway to be placed in a "suicide gown".  (¶¶ 42, 52, 66).  Galloway informed Sergeant Fuller that he might engage in self-harm while housed at the Jail.  (¶ 42; *see also*, Doc. No. 24-1, p. 6).  In response, Sergeant Fuller ordered that Galloway be placed on watch with no property except for a suicide gown and Jail issues sandals.  (*Id.*)

Plaintiff's eleventh cause of action alleges that Sergeant Fuller, while acting within the course and scope of his duties at the Jail, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues, and committed acts of negligence under New York State law by failing to adequately monitor and supervise Galloway; failing to intervene; failing to assist and summon medical assistance for Galloway; failing to maintain "constant watch" of Galloway; and failing to verify that Galloway was exhibiting signs of life.  (¶¶ 51, 59, 140-142).

Plaintiff's tenth and twelfth causes of action allege that Sergeant Fuller, in his personal capacity, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues, and, with deliberate indifference, failed to: (1) monitor and visually observe Galloway without interruption at a post in close proximity; (2) periodically verify Galloway was exhibiting signs of life; and (3) recklessly took no action to summon or obtain medical assistance

for Galloway.  (¶¶ 51, 59, 137, 145, 149-150).

### E.  Plaintiff's Allegations Against Sergeant Westfahl.

Plaintiff alleges that Sergeant Westfahl was involved in the supervision and safekeeping of Galloway at the Jail between April 10, 2019 and April 11, 2019.  (¶ 19). Plaintiff further alleges that Sergeant Westfahl checked Galloway's logbook between April 10, 2019 and April 11, 2019, but failed to independently verify that Galloway was exhibiting signs of life between April 10, 2019 and April 11, 2019.  (¶ 67).

Plaintiff's eleventh cause of action alleges that Sergeant Westfahl, while acting within the course and scope of his duties at the Jail, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues, and committed acts of negligence under New York State law by failing to adequately monitor and supervise Galloway; failing to intervene; failing to assist and summon medical assistance for Galloway; failing to maintain "constant watch" of Galloway; and failing to verify that Galloway was exhibiting signs of life.  (¶¶ 51, 59, 67, 140-142).

Plaintiff's twelfth cause of action alleges that Sergeant Westfahl, in his personal capacity, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues, and, with deliberate indifference, failed to: (1) monitor and visually observe Galloway without interruption at a post in close proximity Galloway; (2) periodically verify Galloway was exhibiting signs of life; and (3) recklessly took no action to summon or obtain medical assistance for Galloway.  (¶¶ 51, 59, 67, 145, 149).

**F.  Plaintiff's Allegations Against Deputy Delahoy.**

Plaintiff alleges that Deputy Delahoy was involved in the supervision and safekeeping of Galloway at the Jail between April 10, 2019 and April 11, 2019.  (¶ 16). Plaintiff further alleges that, from 6:30 p.m. on April 10, 2019 to 10:46 p.m. on April 10, 2019, Deputy Delahoy did not: (1) maintain "constant watch" of Galloway with an uninterrupted or unobstructed clear view of Galloway; or (2) periodically verify Galloway was exhibiting signs of life.  (¶ 62).

Plaintiff's eleventh cause of action alleges that Deputy Delahoy, while acting within the course and scope of his duties at the Jail, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues and committed acts of negligence under New York State law by failing to adequately monitor and supervise Galloway; failing to intervene; failing to assist and summon medical assistance for Galloway; failing to maintain "constant watch" of Galloway; and failing to verify that Galloway was exhibiting signs of life.  (¶¶ 51, 59, 140-142).

Plaintiff's twelfth cause of action alleges that Deputy Delahoy, in his personal capacity, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues and, with deliberate indifference, failed to: (1) monitor and visually observe Galloway without interruption at a post in close proximity Galloway; (2) periodically verify Galloway was exhibiting signs of life; and (3) recklessly took no action to summon or obtain medical assistance for Galloway.  (¶¶ 51, 59, 62, 145, 147).

### G.  Plaintiff's Allegations Against Deputy Roberts.

Plaintiff alleges that Deputy Roberts was involved in the supervision and safekeeping of Galloway at the Jail between April 10, 2019 and April 11, 2019.  (¶ 17).  Plaintiff further alleges that, from 1:50 a.m. on April 11, 2019 to 1:57 a.m. on April 11, 2019 and from 4:26 a.m. on April 11, 2019 to 4:32 a.m. on April 11, 2019, Deputy Roberts did not: (1) maintain "constant watch" of Galloway with an uninterrupted or unobstructed clear view of Galloway; or (2) periodically verify Galloway was exhibiting signs of life.  (¶¶ 64-65).  Plaintiff further alleges that from 1:56 p.m. on April 10, 2019 to 6:05 a.m. on April 11, 2019, Deputy Roberts failed independently verify that Galloway was exhibiting signs of life.  (¶ 66).

Plaintiff's eleventh cause of action alleges that Deputy Roberts, while acting within the course and scope of his duties at the Jail, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues and committed acts of negligence under New York State law by failing to adequately monitor and supervise Galloway; failing to intervene; failing to assist and summon medical assistance for Galloway; failing to maintain "constant watch" of Galloway; and failing to verify that Galloway was exhibiting signs of life.  (¶¶ 51, 59, 140-142).

Plaintiff's twelfth cause of action alleges that Deputy Roberts, in his personal capacity, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues and, with deliberate indifference, failed to: (1) monitor and visually observe Galloway without interruption at a post in close proximity Galloway; (2) periodically verify Galloway was exhibiting

signs of life; and (3) recklessly took no action to summon or obtain medical assistance for Galloway.  (¶¶ 51, 59, 64-66, 145-146).

### H.  Plaintiff's Allegations Against Deputy Burrell.

Plaintiff alleges that Deputy Burrell was involved in the supervision and safekeeping of Galloway at the Jail between April 10, 2019 and April 11, 2019.  (¶ 18). Plaintiff further alleges that, from 10:46 a.m. on April 10, 2019 to 6:05 a.m. on April 11, 2019, Deputy Burrell did not: (1) maintain "constant watch" of Galloway with an uninterrupted or unobstructed clear view of Galloway; or (2) periodically verify Galloway was exhibiting signs of life.  (¶ 63).

Plaintiff's eleventh cause of action alleges that Deputy Burrell, while acting within the course and scope of his duties at the Jail, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues and committed acts of negligence under New York State law by failing to adequately monitor and supervise Galloway; failing to intervene; failing to assist and summon medical assistance for Galloway; failing to maintain "constant watch" of Galloway; and failing to verify that Galloway was exhibiting signs of life.  (¶¶ 51, 59, 140-142).

Plaintiff's twelfth cause of action alleges that Deputy Burrell, in his personal capacity, knew that Galloway was placed on "constant watch" as a result of Jail intake assessments related to suicide and polysubstance abuse issues and, with deliberate indifference, failed to: (1) monitor and visually observe Galloway without interruption at a post in close proximity Galloway; (2) periodically verify Galloway was exhibiting signs of life; and (3) recklessly took no action to summon or obtain medical assistance

for Galloway.  (¶¶ 51, 59, 64-66, 148).

In a nutshell, Galloway was admitted to the jail for violating parole.  During intake he mentioned that he might engage in self-harm and was placed on suicide watch by the jail.  He passed away during the night, for some still unknown reason.  Yet, Plaintiff seeks to hold the jail personnel responsible for a constitutional violation.  If anything, Plaintiff might have a State law claim that survives a motion to dismiss, but certainly not Federal Civil Rights claims.

## ARGUMENT

### I.   The Complaint Fails To Plausibly Allege Proximate Cause.

A complaint alleging Section 1983 violations must contain specific allegations of fact, and allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim.  *See Seils v. Rochester City School District*, 192 F.Supp.2d 100, 121 (W.D.N.Y. 2002).  A Section 1983 action, "like its state tort analogs, employs the principle of proximate causation." *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999).

Here, Plaintiff's allegations are far too speculative to provide the plausible indication of proximate cause required to hold any of the County Defendants liable under a Section 1983 deliberate indifference to medical needs theory of liability.  Indeed, the Complaint is devoid of any facts which plausibly lead to the inference that anything the County Defendants did (or failed to do) was a proximate cause of Galloway's death.  Simply put, Galloway's alleged injuries are not fairly or plausibly traceable to any actual violations of his civil rights by the County Defendants.

13

The Complaint relies heavily upon and incorporates by reference the autopsy report completed by Dr. Jay Stahl-Hertz regarding Galloway. (¶ 71). As the autopsy report demonstrates, Galloway's cause and manner of death remain undetermined. (Veech Decl., Ex. A, pp. 1-5). In fact, related toxicology testing revealed:

> prescribed medications in concentrations that are **not consistent** with an acute mixed drug intoxication that would cause death. Vitreous chemistries were within normal limits. Microscopic examination of tissues was unremarkable… Following a thorough investigation, the cause and manner of death for this decedent remain undetermined.

(*Id.*, p. 5) (emphasis added).

Given the autopsy findings, Plaintiff cannot plausibly allege that: (1) Galloway passed away from a seizure from an alleged failure to administer Keppra (*c.f.*, ¶¶ 44, 50, 95); (2) Galloway passed away from "respiratory depression" due to an alleged improper administration of Olanzapine (*c.f.*, ¶¶ 45-50, 97-99); or (3) that Galloway passed away from "respiratory depression" due to "polysubstance intoxication" (*c.f.*, ¶¶ 46, 100, 121). The absence of the requisite causal link between any alleged unconstitutional conduct and Galloway's death is glaring.

In any event, Plaintiff has not plausibly alleged that the County Defendants exhibited deliberate indifference towards Galloway's medical needs under the Fourteenth Amendment. Plaintiff's Section 1983 causes of action against the County Defendants wholly rely on Dr. Stahl-Herts' musings that the "possibility of toxicity due to an as yet unidentified substance consumed before entry into jail" could not be excluded as a potential cause of Galloway's death. (¶ 71). However, a toxicology examination was performed and did not show lethal levels of prescription or illicit drugs

14

in Galloway's system.  (Veech Decl., Ex. A).

The Complaint also heavily relies on and incorporates by reference the Chautauqua County Jail Suicide Screening Questionnaire, the Chautauqua County Jail Initial Booking Classification Questionnaire, the Chautauqua County Jail Medical Questionnaire, the Chautauqua County Health and Human Services/Jail Division Opiate Withdrawal Assessment and Clinical Opiate Withdrawal Scale, and the Chautauqua County Health and Human Services/Jail Division Provider Orders and Medication Administration Records regarding Galloway.  (¶¶ 41-43).

To this end, the Complaint fails to allege any plausible facts from which it can be inferred that Sheriff Quattrone, Meyer, Damore, Sergeant Fuller, Deputy Delahoy, Deputy Roberts, Deputy Burrell, Sergeant Westfahl, or any Jane/John Doe Defendants actually knew that: (1) Galloway was at risk of polysubstance complications, including "respiratory depression"; (2) Galloway had ingested lethal dosages of illicit drugs prior to entering the Jail on April 10, 2019; or (3) Galloway needed to be monitored for any medical reason other than his own explicit threats of self-harm.  (Veech Decl., Ex. B).

The Complaint merely alleges that any knowledge of Galloway ingesting lethal doses of drugs prior to entering the Jail was only given to those present in Dunkirk City Court, the City of Dunkirk Police, and/or Zentz. (¶¶ 27-31, 33-37, 73, 82, 85-86). Any contentions to the contrary on the part of the County Defendants are speculative and properly disregarded by the Court.  (Veech Decl., Ex. B; *c.f.*, Complaint ¶¶ 51, 94).

Plaintiff's claim that Jail medical staff, including Damore and Meyer, were familiar with Galloway's medical history, including a risk of "respiratory depression," is pulled from whole cloth.  (¶ 51).  There are no plausible facts contained in the Complaint (i.e., dates of past examinations, treatment, or medical record reviews) which plausibly assert that either Damore or Meyer ever came into contact with Galloway prior to April 10, 2019, or that they had advance knowledge that he was at risk of polysubstance complications or "respiratory depression" when he was examined on April 10, 2019.  In fact, the Complaint fails to plausibly allege that any of the named County Defendants ever came into contact with Galloway prior to April 10, 2019.  (¶ 51).

Finally, the Complaint does not contain any plausible facts suggesting that Galloway was placed "on watch" for any reason other than his own threats of self-harm.  (¶ 53; Doc. No. 24-1, p. 6; Veech Decl., Ex. B).  Plaintiff's allegations to the contrary are subverted by the Inmate Floor File, which unambiguously provides that Sergeant Fuller ordered Galloway to be placed on watch because "subject made threats to harm to himself…"  (Doc. No. 24-1, p. 6).  Further, Galloway only scored a 7 on his Clinical Opiate Withdrawal Scale.  (Veech Decl., Ex. B, p. 8).  A score of 25 or greater is required for an inmate to be watched for withdrawal symptoms, in accordance with Jail policy.  (*Id*.).

Simply put, Plaintiff's Section 1983 claims against the County Defendants are based upon the faulty premise that they had actual knowledge that Galloway needed to be put on constant watch for drug overdose and/or seizure-related purposes and willfully ignored or recklessly disregarded that risk.  (¶¶ 46, 51, 53).  As demonstrated

16

by the documents referenced in and annexed to the Complaint, those claims are not plausibly supported by any actual facts.  (Doc. No. 24-1, p. 6; Veech Decl., Ex. B).

## II.   Plaintiff Fails To State Cognizable *Monell* Claims Against the County and Sheriff Quattrone.

Claims sounding in deliberate indifference to a pre-trial detainee's medical needs require a two-step inquiry.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  First, the plaintiff must satisfy the "objective prong" by showing a sufficiently serious need.  *Id*.  Second, the plaintiff must meet the "subjective prong" which requires the officer to have acted with "deliberate indifference" to the challenged condition.  *Id*.

A plaintiff can prove deliberate indifference by showing that the defendant official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety."  *Id*., at 35.  Here, Plaintiff's allegations fail on both fronts.

Plaintiff's *Monell* claims against the County and Sheriff Quattrone must be dismissed because these Defendants "are not subject to § 1983 liability solely on the basis of *respondeat superior*."  *U.S. v. Bonner*, 2020 WL 1963159, at *6 (W.D.N.Y. 2020).  Rather, Plaintiff must plausibly allege facts which demonstrate that the purported constitutional deprivation was caused by an official municipal policy or custom.  *See U.S. v. Erie Cnty.*, 724 F.Supp.2d 357, 370-371 (W.D.N.Y. 2010) ("Section 1983 imposes liability on a municipality when an official custom or policy causes an employee to violate an individual's constitutional rights").  However, the

Complaint fails to do so.

Plaintiff's sixth and ninth causes of action summarily regurgitate the ways in which a plaintiff may satisfy the "policy or custom" requirement of a *Monell* claim. (¶¶ 114, 133). This patently is insufficient. The thrust of Plaintiffs allegations is that Sheriff Quattrone failed to train Jail personnel with respect to "compliance with Quattrone's or the County Sheriff's General Orders concerning, inter alia, Housing Unit Supervision, screenings, assessments, intoxication and withdrawal, among others…" (¶ 60). Plaintiff further alleges that Quattrone's "failures to train included failing to train said defendants to verify signs of life of inmates under constant watch or constant supervision in compliance with Commission of Corrections authority, and in failing to comply with Quattorone's own policies…" (¶ 61).

However, the Complaint is devoid of any facts which plausibly allege that Galloway was placed on watch for any reason other than his explicit threats of self-harm. (*See* Point I, above). To this end, it is undisputed that Galloway was placed in a suicide gown and monitored for signs of self-harm every ten minutes from 6:30 p.m. on April 10, 2019 to 6:00 a.m. on April 11, 2019. (¶¶ 62-66; Doc. No. 24-1).

Thus, Plaintiff's deliberate indifference claims fail. Indeed, courts generally find deliberate indifference to be lacking where officers take affirmative and reasonable steps to protect detainees from suicide. *See Kelsey v. City of New York*, 306 Fed.Appx. 700, 703 (2d Cir. 2009); *Rhyne v. Henderson County*, 973 F.2d 386, 393-394 (5th Cir. 1992) (no deliberate indifference where officers checked suicidal inmates only every ten minutes).

A municipality may be held liable on the basis of failing to train employees "where the failure amounts to deliberate indifference to the rights of persons with whom [the government employees] come into contact."  *Canton v. Harris*, U.S. 378, 388 (1989).  However, "[t]o establish deliberate indifference, a plaintiff ordinarily must 'show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'"  *Sweat v. Butler*, 90 F.Supp.3d 773, 781 (W.D. Tenn. 2015) (quoting *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012)) (plaintiffs failed to state a failure to train claim where they did not "include facts that plausibly indicate that the municipality ignored prior instances of unconstitutional conduct such that it had notice of deficient training in the particular area" or that the "city failed to train officers to handle recurring situations that present an obvious potential for the use of excessive and unnecessary force," and could not base failure to supervise claim on a single-violation theory).

A failure to train or supervise employees may evince municipal policy only where municipal decision-makers continue to adhere "to an approach that they know or should know has failed to prevent constitutional violations."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997).  There is no such allegation here.

The Complaint, liberally construed, merely identifies a single incident of alleged misconduct, which is insufficient to sustain a *Monell* claim against the County or Sheriff Quattrone.  *See Plair v. City of New York*, 789 F.Supp.2d 459, 470 (S.D.N.Y. 2011) ("it is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or

usage") (internal citations and quotations omitted).  A "single incident is insufficient to raise an inference of the existence of a custom, policy, or practice, as is a mere recitation of a failure to train municipal employees."  *Thomas v. City of New York*, 2015 WL 9412543, at *2 (E.D.N.Y. 2015); *see also*, *Worrell v. City of New York*, 2014 WL 1224257, at *12 (E.D.N.Y. 2014) ("[A] single incident of [the plaintiff's] own allegedly negligent investigation is not sufficient to impose municipal liability").

In *Hardy v. Erie County*, 2012 WL 1835624, at *3 (W.D.N.Y. 2012), Judge Skretny dismissed a *Monell* claim where the plaintiff insufficiently pled a policy or custom.  There, Judge Skretny noted "[a]t best, Plaintiff has identified a single incident of misconduct…[which] is not enough to sustain a claim of municipal liability."  *Id.* (*citing Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).  Importantly, "[m]erely alleging that Defendants failed to institute adequate procedures is not enough to survive dismissal.  Such a failure must first rise to the level of deliberate indifference to be actionable."  *Id.*

Similarly, in *Miller v. County of Monroe*, 2013 WL 2180738 (W.D.N.Y. 2013), this Court dismissed a failure to train *Monell* claim because the plaintiff failed to plead any plausible facts to support it.  There, plaintiff alleged that the county defendants failed to properly train and supervise the sheriff's deputies, but did not plead a "**pattern of similar constitutional violations by untrained employees**" to raise his allegations above mere speculation.  *See id.*, at *8 (emphasis added).  This Court held "[d]espite the fact that this is a pre-discovery motion for judgment on the pleadings, the case law from the Second Circuit makes it clear that Plaintiff must allege more than the conclusion that since Miller was killed, the County defendants must have

failed to properly train the sheriff's deputies involved, or that they had a policy or practice in place that led to Miller's unconstitutional death at the hand of deputy sheriffs." *Id*.

Here, as in *Hardy* and *Miller*, the Complaint contains no plausible factual allegations regarding a pattern of similar unconstitutional conduct on the part of the County Defendants.  Plaintiff merely speculates that because Galloway died, the County and Sheriff Quattrone must have failed to properly train the Jail personnel who came into contact with Galloway.  Plaintiff's conclusory, formulaic recitations of the elements of a *Monell* cause of action are insufficient to state a plausible claim. Galloway's death cannot be used to draw the circular conclusion that the County and/or Sheriff Quattrone must have failed to train Jail officials.  *See Bark v. Chacon*, 2011 WL 1884691, at *3 (D. Colo. 2011) ("While Plaintiff generally alleges that the City and County have not properly trained or supervised the individual Defendants…he fails to allege specific deficiencies in training and supervision, or explain how the incident described in the Amended Complaint could have been avoided with different or better training and supervision.  Mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not suffice to fasten liability on the city") (internal citations omitted).

In fact, the Complaint recognizes that the County and Sheriff Quatrone did have an adequate policy for monitoring inmates who present with opioid withdrawal symptoms, but merely alleges that, in this single instance, after several screenings and medical assessments, Galloway was not determined to be at a "moderately

severe" or "severe" risk of withdrawal necessary to institute constant watch for life threatening withdrawal symptoms.  (¶ 61; Veech Decl., Ex. B, p. 8).

It is undisputed that Galloway was promptly screened and examined by Jail medical staff, including a licensed family nurse practitioner.  (¶¶ 41-42).  Galloway's medical history was documented and medications for his pre-existing seizure and mental health conditions were ordered by Jail personnel.  (¶ 43).  During the screening process, Galloway expressed threats of suicide and self-harm.  (¶ 42).  During the screening process, Galloway did not inform Jail personnel that he had ingested lethal amounts of drugs prior to entering the Jail, or that he was in need of immediate medical attention.  (¶ 42.; Veech Decl., Ex. B, pp. 2-7).  Once Galloway was determined to be at risk of self-harm, he was placed in a suicide gown and on suicide watch by Jail personnel.  (¶¶ 41, 52-53; Doc. No. 24-1, p. 6).  To this end, affirmative steps were taken by the County Defendants to prevent Galloway from harming himself, which was the only known immediate health risk to Galloway.

To the extent Plaintiff claims the allegedly improper screening, examination, and diagnosis of Galloway was due to formal policy, she has failed to offer anything apart from mere hope and conjecture to support the allegation that the County and Sheriff Quattrone consistently, and with deliberate indifference, permitted Jail personnel to render inadequate medical care and treatment to pretrial detainees such as Galloway.  *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train").

The Complaint does not even make the allegation that the County or Sheriff Quattrone ignored prior instances of alleged unconstitutional conduct similar to the complained-of actions at bar.   At best, the Complaint alleges that, in this single instance, Jail personnel (i.e., Meyer and/or Damore) may have negligently failed to recognize that Galloway needed to be placed on watch for life-threatening withdrawal symptoms.   This mandates the dismissal of Plaintiff's *Monell* claims.   Boiled down, Plaintiff's allegations sound in common law negligence and/or medical malpractice, which does not become constitutional violations merely because the victim is a prisoner.   *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   Indeed, a plaintiff must show "something more than mere negligence" to establish deliberate indifference in the Fourteenth Amendment context.   *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).   Accordingly, Plaintiff's sixth and ninth causes of action must be dismissed with prejudice.

### III.   Plaintiff's Section 1983 "Official Capacity" Claims Are Redundant.

Plaintiff's Section 1983 "official capacity" claims against Sergeant Fuller, Sergeant Westfahl, Damore, Meyer, Deputy Delahoy, Deputy Roberts, Deputy Burrell, and the John Doe Defendants must also be dismissed because "an official capacity suit is, in all respects other than the name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also*, *Baines v. Masiello*, 288 F.Supp.2d 376, 384 (W.D.N.Y.2003) (noting that "a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent" and that "it would be redundant to allow the suit to proceed against the City of Buffalo and the individual city officials in their official capacities").

23

"[C]laims against individual defendants in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." *Galloway v. Town of Greece*, 732 F.Supp.2d 195, 214 (W.D.N.Y. 2010). As such, "courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" *Zuk v. Onondaga Cnty.*, 2010 WL 3909524, at *11 (N.D.N.Y. 2010) (internal citation omitted). Likewise, here, the official capacity claims against these individuals must be dismissed for the reasons set forth in Point II, above.

### IV. The Complaint Fails To State A Deliberate Indifference Claim Against Damore and Meyer.

More than medical malpractice is required to establish a constitutional violation under the Fourteenth Amendment. Indeed, "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness..." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

Here, the allegations set forth in Plaintiff's seventh cause of action for deliberate indifference to medical needs are indistinguishable from to those set forth in her fourth cause of action for common law negligence / medical malpractice. (¶¶ 90-106, 116-127). Moreover, the Complaint fails to plead any plausible facts demonstrating that either Damore or Meyer acted with the requisite state of mind necessary to constitute deliberate indifference. According to Plaintiff's own version of events, Galloway was provided prompt medical attention and screenings by Jail personnel, and he was prescribed medications determined to be necessary for his pre-existing conditions as a result of those screenings. (¶¶ 41-43).

Even when assuming that Damore and Meyer failed to properly diagnose Galloway as suffering from "polysubstance intoxication," the Complaint contains no plausible facts tending to show that they did so in conscious disregard to a substantial risk of serious harm to Galloway.   The Chautauqua County Health and Human Services/Jail Division Opiate Withdrawal Assessment and Clinical Opiate Withdrawal Scale clearly demonstrate that Galloway did not present with severe withdrawal symptoms that required him to be placed on constant watch for opioid withdrawal. (Veech Decl., Ex. B, p. 8).

At worst, Damore and Meyer rendered a bad diagnosis or erroneously calculated the risks and costs given Galloway's objective presentation, which may constitute medical malpractice **not** deliberate indifference.  *See Sloane v. Borawski*, 64 F.Supp.3d 473, 493 (W.D.N.Y. 2014) (quoting *Harrison v. Barkley,* 219 F.3d 132, 139 (2d Cir.2000) (emphasis added).   Notably absent from the Complaint is any allegation that Galloway informed Damore or Meyer that he needed emergency medical care, or was suffering from polysubstance intoxication or withdrawal-like symptoms.

## V.   The Complaint Does Not Allege Sufficient Personal Involvement Under Section 1983.

The Second Circuit Court of Appeals has noted that it "is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).   To make a finding of personal involvement, a plaintiff must demonstrate that the defendant: (1) participated directly in the alleged constitutional violation; (2) after being informed of the violation through a report or

appeal, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  *Id*.

Simply being part of the prison chain of command, without more, is insufficient to establish liability under § 1983.  *Saxon v. Attica Medical Dept.,* 468 F.Supp.2d 480, 482 (W.D.N.Y. 2007).  Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Id.* at 677.

Here, even assuming that the steps taken by the individual defendants were insufficient, in hindsight, to prevent Galloway's death (which is unsupported by Galloway's autopsy report), the Complaint fails to plausibly allege that these individuals acted with the requisite state of mind sufficient to satisfy the "subjective prong" of the deliberate indifference analysis.  In fact, the documentation annexed to and incorporated by reference in the Complaint demonstrates the opposite to be true.

### A.  Sheriff Quattrone Had No Personal Involvement.

Plaintiff's ninth cause of action must be dismissed because Plaintiff does not allege any personal involvement by Sheriff Quattrone in Galloway's intake screenings, medical treatment, or suicide supervision.  Instead, Plaintiff's allegations are centered on alleged deliberately indifferent training policies, which should be dismissed for the reasons set forth in Point II, above.  There are no other allegations relating to Sheriff

Quattrone or his alleged deliberate indifference towards Galloway.  Courts routinely dismiss Section 1983 claims against a Sheriff in his individual capacity when there are insufficient allegations of personal involvement.  *See e.g., Montalvo v. Lamy*, 139 F.Supp.3d 597, 607 (W.D.N.Y. 2015); *Hernandez v. Sposato*, 2014 WL 3489818, at *4 (E.D.N.Y. 2014); *Pierce v. Chautauqua Cty.*, 2007 WL 2902954, at *4 (W.D.N.Y. 2007).  Accordingly, the same result must be reached here.

**B.  Sergeant Fuller's Alleged Personal Involvement Is Insufficient.**

The personal capacity deliberate indifference claims (Plaintiff's tenth and twelfth causes of action) against Sergeant Fuller must also be dismissed.  The documents annexed to and incorporated by reference in the Complaint make it clear that Sergeant Fuller only knew that Plaintiff was at a risk for suicide by means of self-harm.  (¶ 42; Doc. No. 24-1, p. 6).

Sergeant Fuller did not participate in the completion of Galloway's Suicide Screening Questionnaire, the Chautauqua County Jail Initial Booking Classification Questionnaire, the Chautauqua County Jail Medical Questionnaire, or the Chautauqua County Health and Human Services/Jail Division Opiate Withdrawal Assessment and Clinical Opiate Withdrawal Scale.  Nor did Sergeant Fuller prescribe or administer any medications to Galloway.  Sergeant Fuller merely responded to Galloway's explicit threats of self-harm by ordering that affirmative steps be taken by Jail personnel to prevent same, including ordering the removal of Galloway's property, except a suicide gown and Jail issued sandals; having Galloway placed in a suicide gown; and having Galloway moved to cell CS2, where he was monitored every 10 minutes for signs of self-harm.  (¶¶ 52-54).

There is no allegation that Galloway told Sergeant Fuller that he was experiencing symptoms consistent with a drug overdose or that he had ingested a lethal combination of drugs prior to entering the Jail.  The Complaint does not plausibly allege that Sergeant Fuller obtained knowledge that Galloway had ingested a "suicide cocktail" of drugs prior to entering the Jail on April 10, 2019, or that Sergeant Fuller was notified that Galloway needed to be consistently monitored for signs of life as a result of pre-existing seizure issues or a potential overdose.  (*See* Point I, above; *c.f.*, ¶¶ 28, 34-38, 40-42).    Therefore, Sergeant Fuller responded appropriately to Galloway's threats of self-harm and was not personally involved in any deliberate indifferent acts or omissions towards Galloway.  *See Kelsey*, 306 Fed.Appx. at 703 ("We agree with the other Circuits which have, in general, found deliberate indifference lacking where officers take affirmative and reasonable steps to protect detainees from suicide").

### C.  Sergeant Westfahl's Alleged Personal Involvement Is Insufficient.

Plaintiff alleges that Sergeant Westfahl made supervisory visits and checked Galloway's logbook, but failed to inquire into whether signs of life were verified.  (¶ 67).  This is insufficient to constitute personal involvement in the absence of any plausible facts which suggest that Sergeant Westfahl was informed that Galloway was at a risk of opioid overdose and/or "respiratory depression," or that Galloway needed to be consistently monitored for signs of life as a result of pre-existing seizure issues or a potential overdose, as opposed to self-harm.  As such, Plaintiff's twelfth cause of action against Sergeant Westfahl must be dismissed.

28

**D.  Deputy Delahoy's Alleged Personal Involvement Is Insufficient.**

Similarly, Plaintiff's twelfth cause of action against Deputy Delahoy must be dismissed.  Deputy Delahoy was not made aware that Galloway was at a risk of opioid overdose and/or "respiratory depression," or that Galloway needed to be consistently monitored for signs of life as a result of pre-existing seizure issues or a potential overdose.  Rather, Deputy Delahoy was assigned to monitor Galloway for signs of self-harm, which he did.  This is insufficient to state a Section 1983 claim.  *See Kelsey*, 306 Fed.Appx. at 703.

**E.  Deputy Burrell's Alleged Personal Involvement Is Insufficient**.

Deputy Burrell's alleged personal involvement is also insufficient to impose Section 1983 liability against him in his personal capacity.  The Complaint contains no plausible facts which suggest that Burrell was informed that Galloway was at a risk of an opioid overdose and/or "respiratory depression," or that Galloway needed to be consistently monitored for signs of life as a result of pre-existing seizure issues or a potential overdose, as opposed to self-harm.   Accordingly, the Complaint merely alleges that Burrell, despite monitoring Galloway for signs of self-harm every ten minutes, failed to prevent Galloway's death.  (¶¶ 63-64).  This is insufficient to state a Section 1983 deliberate indifference claim.  *See Kelsey*, 306 Fed.Appx. at 703.

**F.  Deputy Roberts' Alleged Personal Involvement Is Insufficient.**

Deputy Roberts assumed Deputy Burrell's post on two separate occasions.  (¶¶ 64-66).  Both times he checked on Galloway for signs of self-harm.  Deputy Roberts was not made aware that Galloway was at a risk of opioid overdose and/or "respiratory depression," or that Galloway needed to be consistently monitored for signs of life as

a result of pre-existing seizure issues or a potential overdose, as opposed to self-harm.  He was merely tasked with monitoring Galloway for self-harm, which he did.

## VI.    The Individually Named Defendants Are Entitled To Qualified Immunity.

"Qualified immunity shields government officials whose conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Government officials may establish their entitlement to qualified immunity by showing that "their conduct did not violate clearly established rights of which a reasonable person would have known," or that "it was objectively reasonable to believe that their acts did not violate these clearly established rights."  *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (citation and internal quotation marks omitted).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).  The facts of this case satisfy all three inquiries.

First, Plaintiff fails to state a cognizable constitutional violation, as set forth above,  Second, it is respectfully submitted that no decision by the Second Circuit Court of Appeals has held that the actions complained of (i.e. failing to check a pre-trial detainee who has been placed on suicide watch for overdose complications, as opposed to signs of self-harm / suicide) constitutes deliberate indifference to serious medical needs under the Fourteenth Amendment.

30

Finally, even assuming that a pretrial detainee who has been placed on suicide watch has a Fourteenth Amendment right to be continuously checked for signs of life, as opposed to Jail officials taking affirmative and reasonable steps to protect detainees from suicide, it was objectively reasonable for the County Defendants to believe that their actions (i.e., monitoring Galloway for signs of self-harm every 10 minutes from 6:30 p.m. on April 10, 2019 through 6:00 a.m. on April 11, 2019) were lawful.  *See Kelsey*, 306 Fed.Appx. at 703; *Rhyne*, 973 F.2d at 393-394.

Accordingly, it cannot be said that the County Defendants were aware that the alleged conduct was unconstitutional, and therefore they are entitled to qualified immunity.

### VII.    Plaintiff's Allegations Concerning the County and Sheriff Quattrone's Alleged Negligent Training, Supervision, and Retention Under New York State Law Must be Dismissed.

To the extent that Plaintiff's New York State law negligence claims against the County and Sheriff Quattrone (Plaintiff's fifth and eighth causes of action, respectively) are based upon "negligent training, supervision, and retention of employees and subordinates who worked in the Chautauqua County Jail" (¶¶ 110, 130), those claims must be dismissed for two main reasons.

First, it is well settled that a State law claim for negligent hiring, training, or supervision can only proceed if the employee was acting outside the scope of his/her employment.  *See, e.g., Mustafa v. Povero*, 2017 WL 4169339, at *7 (W.D.N.Y. 2019); *Newton v City of New York*, 681 F.Supp.2d 473, 488, 494-95 (S.D.N.Y. 2010) (citations and internal quotation marks omitted); *Ashely v. City of New York*, 7 A.D.3d 742 (2d Dep't 2004).

Here, however, Plaintiff's allegations are based on solely on the County Defendants' alleged conduct regarding the care and supervision Galloway received while he was held at the Jail.  Plaintiff alleges that Damore, Meyer, Deputy Delahoy, Deputy Roberts, Deputy Burrell, Sergeant Westfahl, Sergeant Fuller, and the John Doe Defendants were all County employees and responsible for providing medical care and safekeeping of the decedent.  (¶¶ 13-19).  Plaintiff further alleges that the "County is vicariously liable for the negligence of its staff, employees, and subordinates."  (¶ 112).  All of these allegations fall under the County Defendants' scope of employment.  Therefore, Plaintiff's negligent hiring, training, supervision and retention claim must be dismissed.

Second, Plaintiff has not alleged any facts showing that the County and/or Sheriff Quattrone had any reason to know that the deputies and nurses "had a propensity for the conduct which caused his injury."  *See Perrone v. Monroe Cnty. Sheriff Patrick O'Flynn*, 2015 WL 7776930, at *8 (W.D.N.Y. 2015).  Absent such allegations, Plaintiff's negligent training, hiring, supervision, and retention claims must be dismissed.

### VIII.   Plaintiff's Eleventh Cause of Action Must Be Dismissed As Duplicative.

Plaintiff's eleventh cause of action alleges that the individually named County Defendants negligently breached a duty to "adequately supervise" Galloway while acting within the course and scope of their duties as Jail personnel.  (¶¶ 11-13, 16-19, 140).  There is no allegation that these Defendants acted outside of the course and scope of their duties as agents and/or employees of the County.  (¶¶ 140-143).  As such, Plaintiff's eleventh cause of action is duplicative of his fifth cause of action, which

alleges vicarious liability against the County for the acts of "staff, employees, and subordinates."  (¶ 112).

### IX.    The County Cannot Be Held Vicariously Liable For The Allegedly Negligent Acts/Omissions Of Sheriff Quattrone.

The County's alleged duty to provide and maintain the Jail is distinguishable from the Sherriff's duty to receive and keep safely prisoners in the Jail over which he has custody.  *See Freeland v. Erie County*, 122 A.D.3d 1348, 1350 (4th Dep't 2014) (citing Correction Law § 500-c).  Here, the County cannot be held vicariously liable for the alleged negligent acts of Sheriff Quattrone.  *See Mosey v. County of Erie*, 117 A.D.3d 1381, 1385 [2014]; *Marashian v. City of Utica*, 214 A.D.2d 1034, 1034 (4th Dep't 1995); *Trisvan v. County of Monroe*, 26 A.D.3d 875, 876 (4th Dep't 2006). Therefore, to the extent that Plaintiff's fifth cause of action attempts to impose vicarious liability on the County for the alleged acts/omissions of Sheriff Quattrone in training and/or supervising his deputies, it must be dismissed.

### X.    Plaintiff's Medical Malpractice Claims Should Be Dismissed Because She Has Repeatedly Failed To Comply With CPLR § 3012-a.

Where expert medical opinion evidence will be necessary for a plaintiff to meet her burden, CPLR § 3012-a(a)(1) requires the plaintiff to submit a certificate of merit with the complaint "declaring that her attorney ha[s] reviewed the facts of the case and consulted with at least one physician knowledgeable regarding the relevant issues in this action, and that the attorney ha[s] concluded that there [is] a reasonable basis for the commencement of the action."

Here, Plaintiff did not file a certificate of merit along with her original or Amended Complaint, and therefore did not comply with CPLR § 3012-a.  Accordingly,

Plaintiff's failure to submit the certificate of merit, or present reasons that would excuse the submission, warrants dismissal of the medical malpractice claim.  *See Crowhurst v. Szczucki*, 2017 WL 519262, at *3 (S.D.N.Y. 2017).

### XI.    Plaintiff's Fourth, Fifth, Eighth, and Thirteenth Causes Of Action Should Be Dismissed Because Plaintiff Has Not Plausibly Alleged Proximate Cause.

As more fully set forth in Point I, above, the materials relied upon and incorporated by reference in the Complaint demonstrate the absence of a causal relationship between any negligence on the part of the County Defendants and Galloway's death.

To the extent that Plaintiff's fourth cause of action alleges negligence on the part of the County for enacting a "negligent practice" of failing to provide a physician at the Jail, that claim should be dismissed because the County Defendant's alleged negligence in this regard was not a proximate cause of Galloway's death. *See Roberson v. Wyckoff Heights Medical Center*, 123 A.D.3d 791, 792 (2d Dep't 2014) ("The elements of a cause of action alleging common-law negligence are a duty owed by the defendant to the plaintiff, a breach of that duty, and a showing that the breach of that duty constituted a proximate cause of the injury.  Accordingly, even when negligence and injury are both properly found, the negligent party may be held liable only where the alleged negligence is found to be a proximate cause of the injury") (internal citations and quotations omitted).

Plaintiff's fifth and eighth causes of action should meet the same fate, as they are based entirely upon speculation and belied by the objective medical records and reports that are incorporated by reference in the Complaint.

Finally, Plaintiff's wrongful death action should also be dismissed because a statutory cause of action for wrongful death under the New York Estates, Powers and Trusts Law ("EPTL") requires proof of five elements: (1) death; (2) **caused by the wrongful conduct of a defendant**; (3) giving rise to a cause of action which could have been maintained, at the moment of death, by the decedent if death had not ensued; (4) survival by distributees who have suffered pecuniary loss by reason of the death; and (5) appointment of a personal representative of the decedents.  *See* EPTL § 5-4.1 (emphasis added).  Here, Plaintiff cannot plausibly allege the second element of her wrongful death claim, such that it should be dismissed.  (Veech Decl., Ex. A).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying Declaration of Peter L. Veech, Esq., and the exhibits attached thereto, the Court should dismiss the Plaintiff's sixth, seventh, ninth, tenth, eleventh, and twelfth causes of action in their entireties and with prejudice, and further dismiss Plaintiffs fourth, fifth, eighth, eleventh, and thirteenth causes of action, as set forth herein.

Dated:  November 2, 2020

WEBSTER SZANYI LLP
Attorneys for Defendants,
*County of Chautauqua, Chautauqua County
Sheriff James B. Quattrone, Chautauqua
County Sheriff's Sergeant Fuller,
Chautauqua County Sheriff's Sergeant
Westfahl, Chautauqua County Sheriff's
Deputy Tanner Delahoy, Chautauqua
County Sheriff's Deputy Roberts,
Chautauqua County Sheriff's Deputy
Robert Burrell, Angela Damore, FNP-C,
Amy Meyer, RN, John and/or Jane Doe(s)
said being Chautauqua County Sheriff
Deputies, and John and/or Jane Doe(s)
said being Chautauqua County Jail
Personnel*


By:   *s/Peter L. Veech*
　　　Michael P. McClaren
　　　Peter L. Veech
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
mmcclaren@websterszanyi.com
pveech@websterszanyi.com