

**Commission of Correction**

| | | |
|---|---|---|
| **THOMAS A. BEILEIN**<br>Chairman | **PHYLLIS HARRISON-ROSS, M.D.**<br>Commissioner | **THOMAS J. LOUGHREN**<br>Commissioner |

# CHAIRMAN'S MEMORANDUM

**NO:**   3-2016

**DATE:**   December 21, 2016

**TO:**   SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS AND FACILITY MEDICAL DIRECTORS

**RE:**   Inmate Supervision / Drug Overdose Precautions

---

Recently, the New York State Commission of Correction's Medical Review Board has investigated and reported on several county jail inmate deaths, caused by opioid overdose, occurring just hours after facility admission. With physiological effects identical to heroin, morphine, and other opiates, an opioid is a synthetic, or partly synthetic, narcotic analgesic, such as oxycodone, hydrocodone and methadone. Most opioids, such as OxyContin, contain time-release mechanisms which release the drug into the body over a period of time following ingestion. Consequently, an inmate that has ingested an excessive amount of opioids immediately prior to a jail admission may not exhibit any physiological signs of drug impairment during an intake assessment, but may nevertheless subsequently experience an overdose. Deaths following an opioid overdose are commonly attributed to respiratory depression and failure, as the individual's brain simply "forgets to tell the body to breathe."

In the above-referenced Board investigations, the inmates appeared to be sleeping and exhibited no signs of physical duress, and thus death was often undiscovered by supervising correction officers for hours after demise. These events, and subsequent conversations with local correctional facility officials, resulted in the Commission's review of its minimum standard regulations associated with officer supervision of inmates. As you are aware, Correction Law section 120 and the Commission's regulations contained in Part 7003 of Title 9 NYCRR generally require that the custody and supervision of inmates within a local correctional facility be performed by correction officers. Depending on whether inmates are confined to a single cell, or have access to one another in multiple occupancy units or via access to a housing unit dayspace, officer supervision of inmates within the facility must normally constitute either active [9 NYCRR §7003.2(c)] or general supervision [9 NYCRR §7003.2(b)]. Nevertheless, a correction officer's performance of either active or general supervision requires supervisory visits at intervals not to exceed thirty (30) minutes.

As defined by 9 NYCRR §7003.2(a), a *supervisory visit* is defined as a "personal visual observation of each individual prisoner by facility staff responsible for the care and custody of such prisoners to monitor their presence and proper conduct." Given a correction officer's responsibility for the inmates under his watch, it is the Commission's expectation that, as part of

every "personal visual observation," an officer will verify the inmate's general well-being and appropriately respond to any obvious signs of physical duress, to include an inmate laying on the floor, laying or sitting in an atypical position, hanging, bleeding, vomiting, choking, seizing or experiencing compromised breathing. The Commission recognizes that the performance of a supervisory visit is most challenging during an overnight shift, particularly in conditions where housing unit lighting is reduced, and inmates are sleeping underneath bedding while locked in their individual cells, often behind solid doors with clear vision panels. While a supervisory visit, as defined in 9 NYCRR §7003.2(a), does not require an officer to verify that an inmate is exhibiting signs of life (breathing, bodily movement, etc.), the inmate's presence must be observed. As learned from various inmate escape events, in this state and elsewhere, an officer cannot rely solely on the observation of a blanket-covered human form, or a filled hoodie-style sweatshirt, to verify an inmate's presence. Where an officer cannot observe human flesh while conducting a supervisory round, an inmate's presence must be verified by the detection of some sign of life, including an observable bodily movement or audible speech, breathing or snoring.

9 NYCRR §7010.2(c) requires that a physician immediately examine every inmate who, at the time of admission, appears to be physically incapacitated due to drug or alcohol intoxication. Otherwise, and where warranted due to an inmate's condition, illness or injury, facility officials and/or health staff are required by 9 NYCRR §7003.3(h) to order additional supervision of such inmate, to include *constant supervision*. Specifically, 9 NYCRR §7010.2 requires that "every inmate who at the time of admission appears to be intoxicated by alcohol or drugs shall be subject to increased supervision," to include constant supervision. Any such determination and order of constant supervision shall be recorded pursuant to 9 NYCRR §7003.3(i), and the reasons underlying such determination shall be recorded in the supervision logbook located at the constant supervision post, as required by 9 NYCRR §7003.3(j)(5)(i). Should the inmate still appear intoxicated by drugs or alcohol after twelve (12) hours following admission, 9 NYCRR §7010.2(d) requires an immediate examination by a physician.

Defined by 9 NYCRR §7003.2(d), *constant supervision* consists of "the uninterrupted personal visual observation" of an inmate by a correction officer, who shall "provide continuous and direct supervision by permanently occupying an established post in close proximity" to the inmate. Furthermore, the post must provide the officer "a continuous clear view of all prisoners under supervision," as well as "the ability to immediately and directly intervene in response to situations or behavior observed which threaten the health or safety of prisoners or the good order of the facility."

Considering an officer's responsibility for an inmate under constant supervision, and the officer's "continuous clear view" of the inmate from a fixed post "in close proximity," it is the Commission's position that an officer conducting constant supervision must periodically verify that the inmate is exhibiting "signs of life" including, but not limited to, any observable bodily movement or audible speech, breathing or snoring. Such periodic observations of the inmate's condition shall be documented in the supervision logbook, located at the constant supervision post, as required by 9 NYCRR §7003.3(j)(5)(vi).

It is imperative that a local correctional facility's administration, medical providers and booking/classification staff fully comprehend the varying forms of supervision that officers perform following an inmate's admission. As described above, officers performing supervisory visits during active or general supervision are not necessarily required, or able, to verify that an inmate is breathing or exhibiting other signs of life. As deaths caused by opiate or opioid overdose frequently present as a person "dying in their sleep" following respiratory depression

2

and failure, neither active nor general supervision would suffice to monitor an inmate that has recently consumed, or is suspected of recently consuming, an opiate or opioid. Rather, such inmates must be placed on constant supervision, whereupon an officer will be charged with the continuous monitoring of the inmate's condition and the periodic verification that the inmate is exhibiting signs of life, to include breathing. The order for constant supervision should continue until the inmate is examined and cleared by appropriate medical staff.

With the goal of avoiding any preventable inmate death by overdose, it is strongly recommended that facilities undertake a comprehensive review of all policies and procedures related to inmate admission, inmate supervision, etc., to ensure compliance with the above regulations. Should there be any questions in this regard, please feel free to contact the Commission's Forensic Medical Unit.

Thomas A. Beilein, Chairman